BINGHAM MCCUTCHEN LLP
Peter Obstler (SBN 171623)
peter.obstler@bingham.com
Zachary J. Alinder (SBN 209009)
zachary.alinder@bingham.com
Three Embarcadero Center
San Francisco, CA  94111-4067
Telephone: 415.393.2000
Facsimile: 415.393.2286

Attorneys for Defendant
JPMorgan Chase Bank, N.A., including as
acquirer of certain assets and liabilities of
Washington Mutual Bank from the FDIC, acting
as receiver

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE LUIS ROSAS; STEVEN ZIVANIC; YVONNE ZIVANIC; FERNANDO HINNAOUI; MARTHA V. HINNAOUI, SANDRA ENSHIWAT; ALI REZA AMIRJALALY; KIAN KAMRANI ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,<br><br>        Plaintiffs,<br><br>        v.<br><br>CARNEGIE MORTGAGE, LLC.; CITIMORTGAGE, INC.; CAL-WESTERN RECONVEYANCE CORPORATION; WASHINGTON MUTUAL BANK, F.A.; JP MORGAN CHASE BANK, N.A.; BANK OF AMERICA; QUALITY LOAN SERVICE CORPORATION; FEDERAL NATIONAL MORTGAGE ASSOCIATION; INDYMAC BANK F.S.B.; DEUTSCHE BANK NATIONAL TRUST COMPANY; ATLANTIC & PACIFIC | Case No. CV-11-07692 CAS (CWx)<br><br>**REPLY IN SUPPORT OF DEFENDANT JPMORGAN CHASE BANK, N.A.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)**<br><br>Hearing Date: March 12, 2012<br>Time: 10:00 a.m.<br>Place: Courtroom 5, 2nd Floor<br>Judge: Hon. Christina A. Snyder<br>Complaint filed: August 17, 2011<br>FAC filed: November 28, 2011 |

REPLY IN SUPPORT OF CHASE MOTION TO DISMISS

1  FORECLOSURE SERVICES; WELLS
2  FARGO BANK, N.A.; JUANITO
   MARAMBA AND ESTER
3  MARAMBA; AND DOES 1
   THROUGH 10, INCLUSIVE,
4
5          Defendants.

REPLY IN SUPPORT OF CHASE MOTION TO DISMISS

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ......................................................................... 1

II.     ARGUMENT .............................................................................. 3

    A.      Section 1818(i) Bars Jurisdiction Over This Action ........................ 3

    B.      The Zivanic's Claims Are Barred By Res Judicata ......................... 6

    C.      Plaintiffs' Opposition Cannot Cure The Fundamental Pleading Defects In Their Amended Complaint ...................................... 8

        1.      Legal Standard On A 12(b)(6) Motion to Dismiss .................. 8

        2.      The Breach of Contract And Breach of Covenant Claim Both Fail As A Matter Of Law ...................................... 9

        3.      Plaintiffs' "Quasi-Contract" Claim Is Legally Defective ........ 11

        4.      Plaintiffs Cannot Save Their "No Contract" Claim ............... 13

        5.      Plaintiffs' Due Process Claims Also Lack Merit .................... 14

        6.      Plaintiffs Do Not Address Or Cure The Deficiencies In Their Cal. Civ. Code § 2923.5 Claim ............................... 14

        7.      Plaintiffs Fail To State A Wrongful Foreclosure Claim .......... 16

        8.      Plaintiffs Present No Basis To Prevent Dismissal Of The Declaratory And Injunctive Relief Causes Of Action ............. 16

        9.      Plaintiffs Do Not State A Claim For Quiet Title .................... 17

III.    CONCLUSION .......................................................................... 17

REPLY IN SUPPORT OF CHASE MOTION TO DISMISS

1

## TABLE OF AUTHORITIES

2

Page

3

**FEDERAL CASES**

4

*Alicea v. GE Money Bank*,
5      No. 09-c-91, 2009 WL 2136969 (N.D. Cal. July 16, 2009) ............................. 16

6

*Am. Fair Credit Ass'n v. United Credit Nat'l. Bank*,
7      132 F. Supp. 2d 1304 (D. Colo. 2001) ......................................................... 2, 4

8

*Argueta v. Chase*,
9      No. 2:11-cv-441, 2011 U.S. Dist. LEXIS 41300
       (E.D. Cal. Apr. 11, 2011).................................................................................. 15

10

*Ashcroft v. Iqbal*,
11     129 S. Ct. 1937 (2009).................................................................................... 8, 9

12

*Aspray v. Federal Home Loan Mortg. Corp.*,
13     No. CV 11-299, 2011 WL 1532326 (C.D. Cal. Apr. 20, 2011) ................. 14, 16

14

*Baidoobonso–Iam v. Bank of Am.*,
15     No. 10-cv-9171, 2011 WL 3103165 (C.D. Cal. July 25, 2011) ........................ 17

16

*Barker v. Riverside County Office of Education*,
17     584 F.3d 821 (9th Cir. 2009) ............................................................................. 8

18

*Board of Governor's of the Federal Reserve System v.*
19     *MCorp Financial, Inc.*,
       502 U.S. 32 (1991)........................................................................................... 2, 4

20

*Bosinger v. Belden CDT, Inc.*,
21     358 Fed. Appx. 812 (9th Cir. 2009) ................................................................. 12

22

*Bronson v. Green Tree Servicing, LLC*,
23     No. 2:03-cv-1611, 2009 WL 546159 (E.D. Cal. Mar. 04, 2009) ........................ 7

24

*Canales v. Federal Home Loan Mortg. Corp.*,
25     No. CV 11-2819, 2011 WL 3320478 (C.D. Cal. Aug. 1, 2011) ........................ 14

26

*Caravantes v. Cal. Reconveyance Co.*,
       No. 10-cv-1407, 2010 U.S. Dist. LEXIS 109842 (S.D. Cal. Oct 14, 2010) ..... 15

27

28

REPLY IN SUPPORT OF CHASE MOTION TO DISMISS

1
2

TABLE OF AUTHORITIES
(continued)

Page

3
4

*Champlaie* v. *BAC Home Loans Servicing, LP,*
   706 F. Supp. 2d 1029 (E.D. Cal. 2009) ............................................ 16

5
6

*Das v. WMC Mortgage Corp.,*
   2010 U.S. Dist. LEXIS 122042 (N.D. Cal. Oct. 28, 2010) ............................ 15

7
8

*Davenport v. Litton Loan Servicing,*
   725 F. Supp. 2d 862 (N.D. Cal. 2010)........................................ 13, 15

9
10

*Gaitan v. Mortg. Elec. Registration Sys., Inc.,*
   No. EDCV 09-1009, 2009 WL 3244729 (C.D. Cal. Oct. 5, 2009) .................. 14

11

*Gompper v. VISX, Inc.,*
   298 F.3d 893 (9th Cir. 2002) ............................................ 8

12
13

*Grealish v. Wash. Mut. Bank FA,*
   No. 2:08-cv-763, 2009 WL 2170044 (D.Utah July 20, 2009) ........................ 13

14
15

*Grill v. BAC Home Loans Servicing LP,*
   No. 10-cv-3057, 2011 WL 127891 (E.D. Cal. Jan. 14, 2011)........................ 10

16
17

*Henthorn v. Department of Navy,*
   29 F.3d 682 (D.C. 1994)................................................ 11

18
19

*In re Foreclosure Cases,*
   521 F. Supp. 2d 650 (S.D. Ohio, 2007) ............................................ 16

20
21

*Javaheri v. JPMorgan Chase Bank,*
   No. 10-cv-8185, 2011 WL 2173786 (C.D. Cal. June 2, 2011) ........................ 13

22

*Lampley v. Deutsche Nat. Trust Co.,*
   No. 09-367, 2009 WL 1657428 (C.D. Cal. June 12, 2009) ................................ 7

23
24

*Lane v. Vitek Real Estate Indus.Group,*
   713 F. Supp. 2d 1092 (E.D. Cal. 2010) ............................................ 12

25
26

*Lee v. U.S. Bank,*
   No. 10-1434, 2010 WL 2635777 (N.D. Cal. June 30, 2010) ............................ 13

27
28

*Marks v. Bank of America, N.A.,*
   No. 3:10-cv-8039, 2010 WL 2572988 (D. Ariz. June 22, 2010) .................... 10

REPLY IN SUPPORT OF CHASE MOTION TO DISMISS

<u>TABLE OF AUTHORITIES</u>
(continued)

Page

*Melika, Inc. v. Bank of America Corp.,*
  No. CV 11-00825 DDP (RZx), 2011 WL 4529354
  (C.D. Cal. Sept. 30, 2011) ............................................................. 3, 4

*Molina v. Wash. Mut. Bank,*
  *No. 09-CV-00894-IEG (AJB), 2010 WL 431439*
  *(S.D. Cal. Jan. 29, 2010)* ................................................................... 16

*Neal v. E-Trade Bank*,
  No. S-11-954, 2011 WL 3813158 (E.D. Cal. Aug. 26, 2011)........................... 14

*Nguyen v. BAC Home Loan Servs.,*
  No. 10-1712, 2010 WL 3894986 (N.D. Cal. Oct. 1, 2010)............................... 10

*North Star, Int'l v. Arizona Corp. Comm'n,*
  720 F.2d 578 (9th Cir. 1983) ............................................................. 8

*Omega v. Wells Fargo & Co.,*
  No. c-11-2621, 2011 WL 4345046 (N.D. Cal. Sept. 14, 2011) ......................... 9

*Ozogu v. CitiMortgage, Inc.*,
  No. CV 10-9687, 2011 WL 2940391 (C.D. Cal. July 19, 2011) ..................... 14

*Pedersen v. Greenpoint Mortg. Funding*,
  No. s-11-642, 2011 WL 3818560 (E.D. Cal. Aug. 29, 2011) ......................... 17

*Preciado v. Ocwen Loan Servicing*,
  No. 11-cv-1487, 2011 WL 977819 (C.D. Cal. Mar. 18, 2011).......................... 9

*Ramirez v. SCME Mortg. Bankers*,
  No. 09-cv-1931, 2010 WL 2839476 (S.D. Cal. July 19, 2010) ....................... 17

*Reudy v. Clear Channel Outdoor, Inc.*,
  No. 02-5438, 2010 WL 4918792 (N.D. Cal. Nov. 29, 2010)............................. 6

*Reyes v. Saxon Mortgage Services, Inc.*,
  No. 09-cv-1366, 2009 WL 3738177 (S.D. Cal. Nov. 5, 2009) ....................... 10

*Romero v. Mortgage Co.*,
  2011 U.S. Dist. LEXIS 69673 (N.D. Cal. June 28, 2011)................................ 12

REPLY IN SUPPORT OF CHASE MOTION TO DISMISS

1
2

## TABLE OF AUTHORITIES
(continued)

Page

3
4
*Saxon Mortgage v. Hillery*,
    No. c-08-04357, 2009 WL 2435926 (N.D. Cali. Aug. 3, 2009) ...................... 16

5
6
*Saxon Mortgage v. Hillery,*
    No. c-08-04357, 2008 WL 5170180 (N.D. Cal. Dec. 9, 2008) ........................ 16

7
8
*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) .............................................................. 8

9
*Taylor v. CitiMortgage, Inc.*,
    No. 2:10-cv-505, 2010 WL 4683881 (D. Utah Nov. 10, 2010) ...................... 12

10
11
*Total Coverage, Inc. v. Cendant Settlement Services Group*,
    252 Fed. Appx. 123 (9th Cir. 2007) ................................................... 11

12
13
*United States v. Western Pac. RR. Co.*,
    352 U.S. 59 (1956)......................................................................... 5

14
15
*Villa v. Wells Fargo Bank*,
    2010 WL 935680 (S.D. Cal. Mar. 15, 2010)........................................ 10

16
17
*Walleri v. Fed. Home Loan Bank of Seattle*,
    83 F.3d 1575 (9th Cir. 1996) ........................................................... 8

18
19
*Ward v. Wells Fargo Bank*,
    No. 1:11-cv-515, 2011 WL 2458058 (E.D. Cal. June 16, 2011) ...................... 9

20
21
*Wiebe v. NDEX West, LLC*,
    No. SACV 10-325, 2010 WL 2035992 (C.D. Cal. May 17, 2010)................... 14

22
*Wilson v. GMAC Mortg. LLC*,
    2010 WL 5387829 (S.D. Cal. Dec. 22, 2010) ...................................... 10

23
24
*Wright v. Bank of America, N.A.*
    No. 10-cv-01723, 2010 WL 2889117 (N.D. Cal. July 22, 2010)..................... 10

25
26
*Yau v. Deutsche Bank Nat. Trust Co. Americas, et al.*,
    2011 WL 5402393 (C.D. Cal. Nov. 8, 2011) ....................................... 15

27
28
*Zivanic v. Washington Mutual Bank, FA, et al.*,
    Case No. 10-CV-737 SC (N.D. Cal.) ................................................... 6

# TABLE OF AUTHORITIES
(continued)

Page

**STATE CASES**

*Martinez v. Socoma Companies, Inc.*,
    11 Cal.3d 394 (1974) ........................................................................... 10

*Shell v. Schmidt*,
    126 Cal.App.2d 279 (1954) ................................................................. 10

*Shimpones v. Stickney*,
    219 Cal. 637 (1934) ............................................................................ 17

**FEDERAL STATUTES**

12 U.S.C. § 1818(i) ....................................................................... 1, 3, 4

**STATE STATUTES**

Cal. Civ. Code § 1691 ......................................................................... 13

Cal. Civ. Code § 2923.5 ........................................................... 14, 15, 16

Cal. Civ. Proc. Code § 337 .................................................................. 13

**RULES**

Fed. R. Civ. P. 9 ................................................................................... 13

Fed. R. Civ. P. 12 ............................................................................... 3, 8

Fed. R. Civ. P. 60 .................................................................................. 7

REPLY IN SUPPORT OF CHASE MOTION TO DISMISS

## I.     INTRODUCTION

The threshold issue presented in Chase's Motion to Dismiss is whether the Consent Order entered between the OCC and Chase on April 13, 2011[1] precludes subject matter jurisdiction over this third-party Action under Section 1818(i) of the National Bank Act, 12 U.S.C. § 1818(i) ("Section 1818(i)") because the Action overlaps with and would affect the administration and enforcement of the OCC Consent Order.  Based on the Opposition to Chase's Motion ("Opp."), Plaintiffs apparently agree with Chase that the answer is YES.  (*See*, *e.g.*, Opp. 3:1-4:19.)[2]

In their Opposition, Plaintiffs (including the Zivanics, the only Plaintiffs with any claim against Chase) assert that the "context in which [the] Zivanics filed suit" is to force Chase to comply with the loan foreclosure practices and remedial schemes set forth "[u]nder the Consent Order."  (Opp. 3:6-27.)  Plaintiffs argue that the factual allegations in their First Amended Complaint ("FAC") "are not far fetched" given the allegations of "improper foreclosure practices" addressed by the OCC in its "detailed" Consent Order with Chase and Plaintiffs therefore rely on the fact that Chase is required under that Order "to revamp the way [Chase] deal[s] with troubled borrowers" and conduct an independent "'look back' of all foreclosure proceedings from 2009 and 2010, including [the] Zivanics' foreclosure," evaluate "whether Chase improperly foreclosed on any homeowners," including the Zivanics, and "establish a process to consider whether to compensate borrowers who have been harmed," including the Zivanics.  (*Id.* at 3:1-15.)  Section 1818(i)'s express jurisdictional bar (along with the equitable doctrines of primary jurisdiction and equitable abstention) ensure that competing, piecemeal third-party proceedings, like this one, "***shall not affect***" the ability of

---

[1] The Consent Order is attached as Exhibit A to Chase's Request For Judicial Notice in Support of Chase Motion to Dismiss ("RJN"), Dkt No. 96-1.
[2] Plaintiffs Opposition to Chase's Motion to Dismiss dated Feb. 6, 2012, Dkt. No. 99 ("Opp.").

**REPLY IN SUPPORT OF CHASE MOTION TO DISMISS**

the OCC to implement and administer the "detailed," comprehensive relief available to troubled borrowers under the Consent Order.  *See, e.g., Board of Governor's of the Federal Reserve System v. MCorp Financial, Inc.*, 502 U.S. 32, 43 (1991); *Am. Fair Credit Ass'n v. United Credit Nat'l. Bank*, 132 F. Supp. 2d 1304, 1311 (D. Colo. 2001).

Here, the OCC Consent Order prohibits Chase from taking "***any action that would constitute a significant deviation from, or material change to, the requirements of the Action Plan or this Order, unless and until the Bank has received a prior written determination of no supervisory objection from the Deputy Comptroller.***"  (Consent Order Art. III. (1) (emphasis added).)  The OCC and Plaintiffs each acknowledge that the implementation, administration, compliance, and enforcement of the Consent Order furthers the important public interest in providing troubled borrowers with consistent and comprehensive relief. According to the OCC, "[w]ork is well under way on the actions necessary to comply with the consent orders."  OCC Interim Status Report: Foreclosure-Related Consent Orders ("Status Report") at 4, available at http://www.occ.gov/news-issuances/news-releases/2011/nr-occ-2011-139a.pdf.  Furthermore, the OCC and the banks are still working together to "correct the deficiencies identified by federal regulators," including that each bank is creating "comprehensive action plans to address compliance."  *Id.* at 3.  Indeed, the OCC "expects the servicers to complete the implementation of new processes, policies, and enhanced controls during the first part of 2012."  *Id*. at 3, 15-16.  And, among the many procedures that are already in effect, the OCC announced that more than four million troubled borrowers will receive written notices regarding the administrative procedures and remedial relief available under the Consent Order.  *Id.* at 7.

The Zivanics do not disagree.  Indeed, their Opposition acknowledges that Chase "will have to do substantial work, bear substantial expense to fix the problem,'" and marshal "'a lot of intensive manpower and talent to fix the

REPLY IN SUPPORT OF CHASE MOTION TO DISMISS

1   problems of the past'" to "meet the new regulatory demands" under the Consent

2   Order. (Opp. at 3:16-22.) As the statements from both the OCC and the Zivanics

3   suggest, enforcement of the jurisdictional bar to piecemeal, third party actions that

4   effectively seek to "double down" on the Consent Order, is necessary to ensure

5   that Chase and the OCC have the unfettered ability to provide troubled borrowers,

6   like the Zivanics, with comprehensive and consistent relief.

7   **II.   ARGUMENT**

8        In their Opposition, Plaintiffs do not dispute that their claims are subsumed

9   by the Consent Order, and, as a result, barred under Section 1818(i), the express

10  language of the Consent Order itself, and the equitable doctrines of Primary

11  Jurisdiction and Equitable Abstention. Likewise, Plaintiffs barely address Chase's

12  argument that the Zivanic's claims are barred on *res judicata* grounds. Further,

13  Plaintiffs' Opposition provides no relevant law and fails to distinguish the

14  numerous cases cited by Chase in its Motion to Dismiss, to prevent dismissal as a

15  matter of law under Rule 12(b)(6). As such, Plaintiffs' objective here appears to

16  be getting yet another opportunity to amend their Complaint. (*See* Opp. at 6:17-24

17  and 25:10-18.) For the reasons set forth below, however, the jurisdictional, *res*

18  *judicata*, and substantive pleading defects cannot be cured by amendment.

19       **A.   Section 1818(i) Bars Jurisdiction Over This Action**

20       To their credit, Plaintiffs make no effort to oppose the application of Section

21  1818(i)'s jurisdictional bar to this Action. Indeed, Chase was unable to locate any

22  argument or citation in Plaintiffs' Opposition to refute the argument that Plaintiffs'

23  Action is an improper attempt to "double down" on the OCC Consent Order and

24  get this Court to review, affect and enforce the Consent Order in violation of

25  Section 1818(i) and the express prohibition on third party actions in the Consent

26  Order. *See, e.g., Melika, Inc. v. Bank of America Corp.,* No. CV 11-00825 DDP

27  (RZx), 2011 WL 4529354, at *1 n.1 (C.D. Cal. Sept. 30, 2011) (dismissing claims

28  that plaintiffs failed to oppose in opposition to motion to dismiss).

**REPLY IN SUPPORT OF CHASE MOTION TO DISMISS**

1    In their Opposition, Plaintiffs spend two pages detailing the origin and

2 provisions of the OCC Consent Order to support their contention that the OCC

3 Consent Order's regulation of Chase's alleged "improper foreclosure practices" is

4 precisely "the context in which [the] Zivanics filed suit."  (Opp. at 3:1-4:19.)

5 Plaintiffs make it clear that they seek to force Chase to comply with the loan

6 foreclosure practices and remedial schemes set forth "[u]nder the Consent Order."

7 (*Id.*)  As such, Plaintiffs have not only failed to meet their burden in establishing

8 subject matter jurisdiction over their Action under Section 1818(i), but they

9 candidly admit that they filed this Action to "affect …the issuance or enforcement

10 of [the OCC] … order" in violation of 12 U.S.C. § 1818(i).  *MCorp Fin., Inc.*, 502

11 U.S. at 44; *see also American Fair Credit*, 132 F.Supp.2d at 1311.

12    Accordingly, Plaintiffs' Action strikes at the heart of the federal

13 government's comprehensive efforts to regulate the home lending market and

14 foreclosure practices of national banks.  Lawsuits like Plaintiffs' are not only

15 forbidden under the Section 1818(i) National Bank Act but, if allowed to proceed,

16 will only interfere with the broad and comprehensive relief that the banks and the

17 OCC are trying to provide to millions of distressed home borrowers.

18    Section 1818(i)'s jurisdictional bar is not a mere formality or technicality.

19 Rather, it is designed to prevent private third parties (and their private lawyers)

20 from advancing private piecemeal interests at the expense of the comprehensive

21 compliance and enforcement work, as to which Congress granted exclusive

22 jurisdiction to the OCC.  *See id.*  With respect to the nation's home lending crisis,

23 the cornerstone of the OCC's compliance and enforcement efforts are a series of

24 consent orders entered between it and 16 of the nation's largest financial

25 institutions, including Chase.  Those consent orders vest exclusive jurisdiction over

26 each bank's national home lending and foreclosure practices to the OCC.  *See id.*;

27 *see also* 12 U.S.C. 1818(i); *see also* RJN, Ex. A ("Consent Order").

28    The Consent Order expressly prohibits Chase from taking any actions with

**REPLY IN SUPPORT OF CHASE MOTION TO DISMISS**

respect to the subject matter of this Action other than those approved by the OCC under the Consent Order.  (*See* Consent Order Art. III. (1).)  And the OCC's administration and enforcement of these consent orders is on-going and continues to this day.  On November 22, 2011, the OCC issued the Status Report detailing the status of OCC and bank fact finding and investigations, administration and implementation of a national and comprehensive scheme to address the foreclosure and loan servicing that have impacted the home borrowers across the country.  *See* OCC Interim Status Report: Foreclosure-Related Consent Orders ("Status Report") at 4, available at http://www.occ.gov/news-issuances/news-releases/2011/nr-occ-2011-139a.pdf.  In its Status Report, the OCC confirmed that "[w]ork is well under way on the actions necessary to comply with the consent orders" and detailed a "single, integrated claims process" for borrowers who are aggrieved, including direct outreach to four million borrowers, and numerous other policy and procedure changes for loan servicing and foreclosures, as well as third party oversight of the same, which the OCC has required for each bank, including Chase.  *Id.* at 7–12.  Finally, the Status Report confirms that the OCC "expects the servicers to complete the implementation of new processes, policies, and enhanced controls during the first part of 2012."  *Id*. at 15–16.

The OCC's actions also warrant exercise of the Court's equitable powers to decline or abstain from asserting jurisdiction over matters that fall squarely within the OCC Consent Order under the doctrines of primary jurisdiction and equitable abstention.  Under the doctrine of primary jurisdiction courts defer to agencies in matters over which they share concurrent jurisdiction to promote "uniformity and consistency in the regulation of business entrusted to particular agency ...."  *United States v. Western Pac. RR. Co.,* 352 U.S. 59, 65 (1956).  Further, the Court should abstain from exercising jurisdiction, because comprehensive mortgage and foreclosure relief presents complex economic policy questions that will be better served through OCC oversight and enforcement than in piecemeal, private party

REPLY IN SUPPORT OF CHASE MOTION TO DISMISS

1  lawsuits.  *See Reudy v. Clear Channel Outdoor, Inc.*, No. 02-5438, 2010 WL
2  4918792, at *2 (N.D. Cal. Nov. 29, 2010).  As the OCC Consent Order and the
3  Status Report discussed above demonstrate, the OCC has unique expertise and
4  authority to regulate home lending practices and to devise and implement a
5  comprehensive remedial scheme that it, and it alone, is presently situated to
6  administer and enforce.  Furthermore, the OCC has stated that Chase "shall not take
7  any action," unless it is approved by the OCC in connection with the Consent Order.
8  (Consent Order Art.III.(1).)  As such, no good can come from piecemeal, third-party
9  litigation in which private litigants try to force the courts to insert themselves into
10  disputes that involve the subject matter of on-going OCC proceedings, enforcement
11  actions and orders.

12      Uniformity and consistency are critical to the success of such a
13  comprehensive relief plan and without them, neither the OCC nor the banks will be
14  able to effectively or efficiently implement and administer the provisions and
15  directives in the consent orders.  Allowing third-party Plaintiffs, like the Zivanics,
16  to prosecute a one-off class action for a limited and discrete group of home
17  borrowers will create duplicative and dueling legal proceedings that could result in
18  inconsistent and conflicting relief that would violate the express provisions of the
19  Consent Order and disrupt the uniform and comprehensive regulatory plan being
20  worked out between the banks and the OCC.

21      **B.  The Zivanic's Claims Are Barred By *Res Judicata***

22      The doctrine of *res judicata* bars Plaintiffs from reasserting claims that they
23  previously asserted in another action based on the same loans in dispute here.  In
24  this case, Steven and Yvonne Zivanic are the only named plaintiffs in this Action
25  with any claim against Chase.  On January 27, 2010, the Zivanics filed a
26  Complaint based on the identical claims and loans alleged in the FAC in *Zivanic v.*
27  *Washington Mutual Bank, FA, et al.*, Case No. 10-CV-737 SC (N.D. Cal.).  That
28  Action was involuntarily dismissed in its entirety.  *See* RJN, Exs. H & I.

**REPLY IN SUPPORT OF CHASE MOTION TO DISMISS**

1    In their Opposition, Plaintiffs argue that because Chase purchased those
2  loans from WaMu, a now-defunct predecessor bank, Chase is not in privity with
3  the Zivanics.  Opp. at 2:2-4.  As such, the Zivanics conclude that Chase is a third
4  party purchaser of certain assets of WAMU and "that's it."  *Id*.  Although Chase is
5  not entirely clear what point Plaintiffs attempt to make, Plaintiffs' arguments
6  regarding Chase's subsequent assumption of the servicing of the Zivanics'
7  underlying loans does not insulate the claims in the FAC from the doctrine of *res*
8  *judicata*.

9    *Res judicata* does not require "privity" between the Plaintiffs and
10 Defendants.  *Res Judicata* applies when the parties in both lawsuits are the same or
11 privity exists between the parties.  *See, e.g., Lampley v. Deutsche Nat. Trust Co.,*
12 No. 09-367, 2009 WL 1657428, at *2 (C.D. Cal. June 12, 2009).  It applies here
13 because, in the prior lawsuit, like the current one, the Zivanics sued Washington
14 Mutual Bank ("WaMu"), Chase, Deutsche Bank National Trust Company
15 ("Deutsche Bank"), and Quality Loan Service Corporation based on the same
16 home loan and foreclosure-related claims.  The claims and the parties are therefore
17 identical for *res judicata* purposes.  *Compare* FAC, ¶ 4 with RJN, Ex. G at ¶¶ 1 &
18 71-75; *see also Bronson v. Green Tree Servicing, LLC*, No. 2:03-cv-1611, 2009
19 WL 546159, at *5 (E.D. Cal. Mar. 04, 2009).

20    Nor do Plaintiffs dispute that the "prior action in [a] sister court has been
21 dismissed," (Opp. at 1:28), or that this dismissal constituted a final judgment
22 against the Zivanics.  Indeed, the Zivanics already attempted to revive their
23 previously dismissed case before Judge Conti in the Northern District under Rule
24 60(b).  RJN, Ex. I.  Judge Conti denied the Zivanics' request for relief from the
25 dismissal under Rule 60(b), and found that Chase "would be prejudiced if the
26 Court were to re-open a foreclosure case that was dismissed in July [of 2010]."  *Id*.
27 at 3:18-26.  The Zivanics already had their day in court and lost.  Their new case
28 runs afoul of the doctrine of *res judicata* and must be dismissed as to all the prior

Defendants, including Chase.

### C.     Plaintiffs' Opposition Cannot Cure The Fundamental Pleading Defects In Their Amended Complaint

Plaintiffs' Opposition largely fails to take on Chase's Motion to Dismiss each cause of action for failure to state a claim.  To the extent Plaintiffs do make a coherent argument in opposition, neither the law nor the facts support Plaintiffs' assertions.  Accordingly, the FAC fails as a matter of law under Rule 12(b)(6).

### 1.     Legal Standard On A 12(b)(6) Motion to Dismiss

As a preliminary matter, Plaintiffs state the incorrect legal standard for determination of a motion to dismiss under Rule 12(b)(6).  Plaintiffs claim that the Court must "assume to be true" allegations "even if doubtful in fact."  (Opp. at 6:19-20.)  The Supreme Court disagrees.

To survive a motion to dismiss, a complaint must plead sufficient factual matter, if accepted as true, to state a claim to relief that is plausible on its face.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Contrary to Plaintiffs' claim, nowhere does the Supreme Court or the Ninth Circuit condone accepting "doubtful" allegations as true.  Opp. at 6:17-24.[3]

Instead, the pleading standard incorporates two important, related principles. First, a complaint cannot rest on conclusory assertions, nor simply allege legal conclusions masquerading as facts.  *See Iqbal*, 129 S. Ct. 1937, 1950 (2009) (courts are "not bound to accept as true a legal conclusion couched as a factual allegation") (internal citation omitted); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (court need not accept "merely conclusory, unwarranted deductions of fact" or "naked assertions devoid of further factual

---

[3] Plaintiffs citations to *North Star, Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983), *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002), *Walleri v. Fed. Home Loan Bank of Seattle*, 83 F.3d 1575, 1580 (9th Cir. 1996), and *Barker v. Riverside County Office of Education*, 584 F.3d 821, 824 (9th Cir. 2009) do not support the contention that the Court should accept "doubtful in fact" allegations as true.  Instead, they allow a court to accept *reasonable* inferences.

REPLY IN SUPPORT OF CHASE MOTION TO DISMISS

1  development").

2      Second, Plaintiffs' allegations must state a claim that is **plausible**.  In other

3  words, "doubtful" facts don't work.  Nor is it enough to allege specific facts unless

4  those facts plausibly add up to a claim for relief.  *See Iqbal*, 129 S. Ct. at 1949-50

5  ("only a complaint that states a plausible claim for relief survives a motion to

6  dismiss").  Here, Plaintiffs utterly fail to allege plausible facts in their Complaint

7  sufficient to state a claim for any relief.

8         **2.      The Breach of Contract And Breach of Covenant Claim
9                    Both Fail As A Matter Of Law**

10      Plaintiffs' Opposition maintains the fiction that they may sue for breach of

11  contract and breach of the covenant of good faith and fair dealing under HAMP

12  and Chase's Service Provider Agreement ("SPA") with Fannie Mae, claiming they

13  are "intended third party beneficiaries."[4]  (Opp. at 22:19-24:4.)  Neither claim has

14  any merit.  The law is settled that there is no private right of action under HAMP

15  and that borrowers are not "intended third-party beneficiaries" under the SPA.

16  *See, e.g., Preciado v. Ocwen Loan Servicing*, No. 11-cv-1487, 2011 WL 977819 at

17  *1 (C.D. Cal. Mar. 18, 2011); *Omega v. Wells Fargo & Co.,* No. c-11-2621, 2011

18  WL 4345046 at *4 (N.D. Cal. Sept. 14, 2011).

19      In opposition, Plaintiffs do not even attempt to distinguish these authorities

20  because they cannot possibly do so.  Neither HAMP nor the SPA create any

21  "contractual relationship" with Plaintiffs as a matter of law.  *See id*.  Because

22  Plaintiffs' covenant of good faith and fair dealing claim is based on the same

23  deficient allegations of a breach of the "HAMP contract" (FAC, ¶¶ 263-67), it also

24  fails to state a claim.  *See, e.g., Ward v. Wells Fargo Bank*, No. 1:11-cv-515, 2011

---

26  [4] In its opening memorandum, Chase also joined in the Citi-Mortgage Motion to
27  Dismiss, filed January 5, 2012.  Plaintiffs have not objected to that joinder and
    would suffer no prejudice from it in any event.

**REPLY IN SUPPORT OF CHASE MOTION TO DISMISS**

1   WL 2458058, at *5 (E.D. Cal. June 16, 2011) (dismissing breach of covenant

2   claim in SPA); *Nguyen v. BAC Home Loan Servs.*, No. 10-1712, 2010 WL

3   3894986, at *6 (N.D. Cal. Oct. 1, 2010).

4         Plaintiffs cite three cases in opposition, none of which help them.  Opp. at

5   23:1-28.  The first, *Reyes v. Saxon Mortgage Services, Inc.,* No. 09-cv-1366, 2009

6   WL 3738177, at *2 (S.D. Cal. Nov. 5. 2009), is an outlier against the numerous

7   federal court decisions cited above and in Citi-Mortgage's Motion, and the Courts

8   considering *Reyes* have rejected it.  *See e.g., Wright v. Bank of America, N.A.* No.

9   10-cv-01723, 2010 WL 2889117, at *5 (N.D. Cal. July 22, 2010) (rejecting *Reyes*

10  because "the HAMP contract does not grant plaintiff the right to enforce the

11  provisions of the agreement."); *accord Marks v. Bank of America, N.A.*, No. 3:10-

12  cv-8039, 2010 WL 2572988, at *4 (D. Ariz. June 22, 2010).  Even the Judge in

13  *Reyes* has since reversed course and dismissed HAMP claims like these.  *See*

14  *Wilson v. GMAC Mortg. LLC*, 2010 WL 5387829, at *1 (S.D. Cal. Dec. 22, 2010);

15  *Villa v. Wells Fargo Bank*, 2010 WL 935680, at *2 (S.D. Cal. Mar. 15, 2010).

16        The last two cases Plaintiffs cite, *Shell* and *Martinez*, are from California

17  state court and are inapplicable to Plaintiffs' breach of contract and breach of

18  covenant claims here.  (*See* Opp. at 23:8-28) (*citing Shell v. Schmidt*, 126

19  Cal.App.2d 279 (1954) and *Martinez v. Socoma Companies, Inc.*, 11 Cal.3d 394

20  (1974)).  Neither case involves claims pursuant to any purported HAMP-related

21  contract, and both were decided decades before HAMP existed.

22        Finally, Plaintiffs do not even oppose Chase's motion to dismiss the

23  contractual claims on the ground that Plaintiffs do not allege any resulting

24  damages.  *See* Opp. at 22:19-24:4; *see also* FAC, ¶ 246.  Damages are an element

25  of a breach of contract claim, and therefore, Plaintiffs' contractual claims should

26  be dismissed on this ground as well.  *See Grill v. BAC Home Loans Servicing LP*,

27  No. 10-cv-3057, 2011 WL 127891 at *3-7 (E.D. Cal. Jan. 14, 2011).

28

### 3. Plaintiffs' "Quasi-Contract" Claim Is Legally Defective

Plaintiffs' "Quasi-Contract" claim fails because Plaintiffs allege that there is an express written contract – the mortgage contract – between the Parties.  FAC, ¶ 4, 96 and 98.  Under California law, an action in quasi-contract does not lie "when an enforceable, binding agreement exists defining the rights of the parties." *Total Coverage, Inc. v. Cendant Settlement Services Group*, 252 Fed. Appx. 123, 126 (9th Cir. 2007).  Plaintiffs' Opposition plays fast and loose with their own factual allegations, stating that there was "no valid contract between [the] Zivanics and Chase," and then claiming that it is Chase's burden to "offer documents substantiating said notion."  (Opp. at 13:25-27.)

But the FAC and judicially noticed documents tell a different story.  The FAC expressly states that the Zivanics entered the mortgage agreement with WaMu, and "WAMU was later acquired by defendant Chase," and that the Zivanic's mortgage loan was sold "to defendant Chase."  (FAC, ¶¶ 36, 97-101.)  A similar story unfolds in the Zivanic's previously dismissed 2010 Complaint.  (*See* RJN, Dkt No. 96-7, Ex. G at ¶¶ 25-50.)  In the prior Complaint, the Zivanics alleged that WaMu was the lender, that Chase purchased most of WaMu's assets, and that the Zivanics sent correspondence to "WAMU and/or CHASE," including an accepted "Special Forbearance Agreement" attached to the Complaint with the Deed of Trust, and that they had been told that "WAMU had become CHASE." (*Id.*)  This is a far cry from the claim that no valid mortgage contract exists with Chase.  Plaintiffs are bound by the allegations in their Complaints, and the Court should ignore inconsistent "facts" claimed in their Opposition.  *See, e.g., Henthorn v. Department of Navy,* 29 F.3d 682, 688 (D.C. 1994) (contradictory allegations made in opposing motion to dismiss "most certainly may not be considered when the facts they contain contradict those alleged in the complaint.").

Plaintiffs' Opposition raises two additional arguments, both of which fail.  First, Plaintiffs argue that Chase does not have "standing to enforce" the note,

REPLY IN SUPPORT OF CHASE MOTION TO DISMISS

1  because Chase is the servicer and beneficial interest in the note had been

2  transferred "to an investment bank." (Opp. at 13:27-14:6.)  Putting aside the

3  contradictory allegations in their FAC, Plaintiffs' theory appears to be that their

4  mortgage was assigned to a mortgage trust pool, and therefore, Chase allegedly

5  lost its interest in the mortgage, and Plaintiffs' obligation to make their mortgage

6  payments was extinguished.  (*See id.*; *see also* FAC, ¶ 311.)  Numerous courts

7  have considered and rejected this theory.  *See, e.g., Lane v. Vitek Real Estate*

8  *Indus.Group*, 713 F. Supp. 2d 1092, 1099 (E.D. Cal. 2010) ("The argument that

9  parties lose their interest in a loan when it is assigned to a trust pool has … been

10 rejected by many district courts.").  Simply put, "[t]here is no legal authority that

11 the sale or pooling of investment interests in an underlying note can relieve

12 borrowers of their mortgage obligations or extinguish a secured party's rights to

13 foreclose on secured property.'"  *Taylor v. CitiMortgage, Inc.*, No. 2:10-cv-505,

14 2010 WL 4683881, at *3 (D. Utah Nov. 10, 2010).

15     Plaintiffs' second defective argument is that the "equitable doctrine of unjust

16 enrichment applies" because Chase was not entitled to retain Plaintiffs' mortgage

17 payments.  (Opp. at 14:15:15-9.)  As a preliminary matter, Plaintiffs' cause of

18 action for "unjust enrichment" should be rejected because the weight of authority

19 and better reasoned cases hold that "there is no cause of action for unjust

20 enrichment" under California law.  *Bosinger v. Belden CDT, Inc.*, 358 Fed. Appx.

21 812, 815 (9th Cir. 2009); *accord Romero v. Mortgage Co.*, No. 10-cv-5833, 2011

22 WL 2560252 at *3 (N.D. Cal. June 28, 2011).  In addition, Plaintiffs' unjust

23 enrichment claim makes no sense on its face.  The Zivanics "default[ed]" on their

24 mortgage (FAC, ¶ 101) and could only make "timely monthly payments if their

25 loan [was] modified with a reasonable payment plan[]."  (*Id.* at ¶ 100.)  Nor could

26 the speculation that Chase may not have "actually forwarded payments from [the]

27 Zivanics to the beneficial owner of the loan" support an unjust enrichment claim.

28 Opp. at 15:6-9.  Even under Plaintiffs' implausible theory, retention of payments

REPLY IN SUPPORT OF CHASE MOTION TO DISMISS

1   by Chase would have been at the expense of the purported "beneficial owner," not

2   the Zivanics.  *See, e.g., Lee v. U.S. Bank*, No. 10-1434, 2010 WL 2635777, at *12

3   (N.D. Cal. June 30, 2010) (dismissing claim that lender "was 'unjustly enriched'

4   each time [borrower] made his monthly mortgage payment").

5              **4.      Plaintiffs Cannot Save Their "No Contract" Claim**

6          Similarly, Plaintiffs' "No Contract" claim is fatally defective for at least five

7   reasons.  ***First,*** like the quasi-contract claim, where Plaintiffs have expressly

8   alleged that there is a mortgage contract governing the relationship between

9   Plaintiffs and Chase, they cannot credibly assert a "No Contract" Claim.   (FAC, ¶

10  4, 96 and 98.)  ***Second,*** even if Plaintiffs could avoid their underlying mortgage

11  contract, Plaintiffs provide no basis in their opposition to toll the statute of

12  limitations, which would have run years ago.  (*Id.* at ¶ 98 (Zivanics entered their

13  mortgage contract in 2004)); *see also* CAL. CIV. PROC. CODE § 337.  ***Third,*** even if

14  the claim was timely, claims about WaMu's conduct and an alleged failure of

15  "meeting of the minds" with WaMu in 2004 can only be pursued against the FDIC,

16  who retained liabilities against WaMu, not Chase.  *Grealish v. Wash. Mut. Bank*

17  *FA*, No. 2:08-cv-763, 2009 WL 2170044, at *2 (D.Utah July 20, 2009) (granting

18  motion to dismiss WaMu claims, because Chase did not succeed to WaMu's

19  liabilities, so Plaintiff could only pursue remedies "against the FDIC Receiver.").

20  ***Fourth,*** to the extent Plaintiffs seek rescission of the underlying mortgage contract,

21  Plaintiffs failed to allege tender of the amount due, which is required by California

22  law.  *Davenport v. Litton Loan Servicing*, 725 F. Supp. 2d 862, 880 (N.D. Cal.

23  2010); *see also* CAL. CIV. CODE § 1691(b).  ***Fifth,*** Plaintiffs' Opposition vaguely

24  claims that their "No Contract" claim is based on purported "underwriting fraud"

25  by WaMu leading to no "meeting of minds" (Opp. at 15:15-20), but if so, this

26  claim fails to plead fraud with specificity under Fed. Rule Civ. Proc. 9(b).  *See*

27  *Javaheri v. JPMorgan Chase Bank*, No. 10-cv-8185, 2011 WL 2173786, at *3

28  (C.D. Cal. June 2, 2011) (dismissing similar contract claim on 9(b) grounds).

**REPLY IN SUPPORT OF CHASE MOTION TO DISMISS**

1

### 5.    Plaintiffs' Due Process Claims Also Lack Merit

2       Plaintiffs' first, second and fourth causes of action for alleged "due process"

3    violations all fail to state a claim because Chase is not a state actor and HAMP

4    does not create a protected property interest.[5]  *See, e.g., Ozogu v. CitiMortgage,*

5    *Inc.*, No. CV 10-9687, 2011 WL 2940391, *6 (C.D. Cal. July 19, 2011); *Neal v. E-*

6    *Trade Bank*, No. S-11-954, 2011 WL 3813158 at *3 (E.D. Cal. Aug. 26, 2011).

7    Plaintiffs' Opposition fails to take on the "protected property interest" argument

8    and the motion should be granted on that basis alone.  Further, in opposition to the

9    state actor argument, Plaintiffs merely cite and quote a series of general due

10   process cases that would only apply, as Plaintiffs concede "under different

11   circumstances," *e.g.*, to public defenders.  (Opp. at 20:12-22:17.)  In short,

12   Plaintiffs cannot bootstrap their defective HAMP claims into equally defective due

13   process claims.

14

### 6.    Plaintiffs Do Not Address Or Cure The Deficiencies In Their Cal. Civ. Code § 2923.5 Claim

15

16       Putting aside the considerable line of federal authority that holds that there is

17   no private right of action under § 2923.5,[6] Plaintiffs' claim also fails because their

18   allegations establish Chase sufficiently contacted the Zivanics and analyzed their

19   loans to satisfy the statute, and § 2923.5 provides no remedy to a plaintiff whose

20   home has already been foreclosed and sold.  Plaintiffs' Opposition fails to refute,

21   _____

22   [5] In its opening papers, Chase joined Wells Fargo's arguments (Doc Nos. 32 and

23   79) in their Motion to Dismiss Plaintiffs' due process claims.  Plaintiffs do not oppose the joinder, and no prejudice could possibly arise from the joinder.

24   [6] *See, e.g., Canales v. Federal Home Loan Mortg. Corp.*, No. CV 11-2819, 2011 WL 3320478, at *6 (C.D. Cal. Aug. 1, 2011); *Aspray v. Federal Home Loan*

25   *Mortg. Corp.*, No. CV 11-299, 2011 WL 1532326, at *4 (C.D. Cal. Apr. 20, 2011) (observing "no language indicating an intent to create a private right of action"); *Wiebe v. NDEX West, LLC*, No. SACV 10-325, 2010 WL 2035992, at *4-5 (C.D.

26   Cal. May 17, 2010) (concluding that statute does not create a private right of action); *Gaitan v. Mortg. Elec. Registration Sys., Inc.*, No. EDCV 09-1009, 2009

27   WL 3244729, at *7 (C.D. Cal. Oct. 5, 2009) ("[s]ection 2923.5 contains no language that indicates any intent whatsoever to create a private right of action.")

28

or even address, either of these arguments.  (Opp. at 6:26-10:25.)

Instead, Plaintiffs argue that "Section 2923.5 requires contact with the borrower, not form language stapled to a form" and that bare allegations of no contact are sufficient to defeat a motion to dismiss.  (*Id.*)  Neither argument holds any water.  The Zivanics have no remedy because the foreclosure already occurred.  *See Yau v. Deutsche Bank Nat. Trust Co. Americas, et al.*, 2011 WL 5402393 (C.D. Cal. Nov. 8, 2011) (dismissing § 2923.5 claim with prejudice).  Further, their own allegations admit WAMU and Chase analyzed their loan and considered modification.  (FAC, ¶¶ 98-99.)  Those allegations by themselves disprove the Plaintiffs' claims of "no contact" in the Opposition.  The Zivanics' previously dismissed Complaint and its attached exhibits provide even more detail showing that Chase and WaMu both had significant contacts with the Zivanics throughout the loan modification review process.  (*See* RJN, Ex. G, at ¶¶ 29-50 & Exs. H and I.)  Those judicial admissions are equally fatal to the Zivanic's claims here.

The cases that Plaintiffs cite are distinguishable on these same grounds.  (Opp. at 7:7-8:7.)  In both *Argueta* and *Caravantes*, the Courts held that allegations of no contacts were sufficient to defeat a motion to dismiss, even though defendants attached the notice of default including a declaration of compliance with § 2923.5. *See Argueta v. Chase*, No. 2:11-cv-441, 2011 U.S. Dist. LEXIS 41300 (E.D. Cal. Apr. 11, 2011); *see also Caravantes v. Cal. Reconveyance Co.,* No. 10-cv-1407, 2010 U.S. Dist. LEXIS 109842 (S.D. Cal. Oct 14, 2010).  But here, Plaintiffs allege that WaMu and Chase contemplated and rejected their loan modification.  As the *Davenport* court held, allegations like those here do not state a § 2923.5 claim.  *Davenport v. Litton Loan Servicing, LP*, 725 F.Supp.2d 862, 877 (N.D. Cal. 2010) (dismissing § 2923.5 claim because the alleged facts negated the claim by alleging that the lender contemplated but rejected the loan modification).[7]

---

[7] Plaintiffs citations to *Das v. WMC Mortgage Corp.*, 2010 U.S. Dist. LEXIS

(Footnote Continued on Next Page.)

REPLY IN SUPPORT OF CHASE MOTION TO DISMISS

### 7.      Plaintiffs Fail To State A Wrongful Foreclosure Claim

Plaintiffs' wrongful foreclosure claim fails because Plaintiffs do not allege tender of the amount of indebtedness due.  Thus, even if Plaintiffs challenge the foreclosure based on irregularities in the foreclosure process, the law still requires Plaintiffs to allege tender.  *Alicea v. GE Money Bank*, No. 09-c-91, 2009 WL 2136969 at \*3 (N.D. Cal. July 16, 2009).  Plaintiffs do not attempt to refute this, nor can they.  Instead, Plaintiffs argue that Chase doesn't own the loan and that "the identity of the Lender . . . remains unknown."  (Opp. at 13.)  This is wrong on the facts (*see, e.g.,* Section II.C.3. above), but it is also irrelevant and wrong on the law.  It is well-settled under California law that "neither possession of the promissory note nor identification of the party in possession is a pre-requisite to non-judicial foreclosure."  *Champlaie* v. *BAC Home Loans Servicing, LP,* 706 F. Supp. 2d 1029, 1050 (E.D. Cal. 2009); *accord Aguirre v. Cal-Western Reconveyance Corp, et al.*, 2012 WL 273753, \*6 (C.D. Cal. 2012) (Snyder, J.).

Nor do the two cases Plaintiffs cite support their argument.  These cases, *Saxon Mortgage v. Hillery*[8] and *In re Foreclosure Cases*, 521 F. Supp. 2d 650, 653 (S.D. Ohio, 2007), are irrelevant, as they only address whether the plaintiffs had standing to bring foreclosure actions, whereas here, the foreclosure has already occurred.  (FAC, ¶ 101.)

### 8.      Plaintiffs Present No Basis To Prevent Dismissal Of The Declaratory And Injunctive Relief Causes Of Action

Plaintiffs do not dispute that declaratory and injunctive relief are not causes of action in California.  *See, e.g.*, *Aspray v. Fed. Home Loan Mortg. Corp.*, No. 11-

---

(Footnote Continued from Previous Page.)

122042, 10-25 (N.D. Cal. Oct. 28, 2010) and references to purported "fake trustee forms" and alleged "robo-signers" are irrelevant.  They have nothing to do with whether Plaintiffs alleged facts sufficient to state a claim for relief under § 2923.5.
[8] Plaintiffs do not provide a full citation to *Hillery*, but Chase believes that they mean to cite and discuss *Saxon Mortgage v. Hillery,* No. c-08-04357, 2008 WL 5170180 (N.D. Cal. Dec. 9, 2008).

**REPLY IN SUPPORT OF CHASE MOTION TO DISMISS**

cv-299, 2011 WL 1532326, at *6 (C.D. Cal. Apr. 20, 2011).  Plaintiffs' Opposition
merely states that they "request a declaration of their rights and duties under the
law."  (Opp. at 25:5-9.)  Whether Plaintiffs can establish entitlement to these forms
of relief is irrelevant here – these simply are not independent causes of action and
should be dismissed.

### 9.     Plaintiffs Do Not State A Claim For Quiet Title

Plaintiffs' failure to allege that they have discharged their debt is fatal to
their cause of action to "Quiet Title."  *Shimpones v. Stickney*, 219 Cal. 637, 649
(1934) (holding that it is "settled in California that a mortgagor cannot quiet his
title against the mortgagee without paying the debt secured."); *accord*
*Baidoobonso–Iam v. Bank of Am.*, No. 10-cv-9171, 2011 WL 3103165, at *7 (C.D.
Cal. July 25, 2011).

Plaintiffs seek to escape this conclusion by arguing that the true lender is an
investment trust and that the loan was "pooled and sold to investors many times
over."  (Opp. at 18:12-20:10.)  These arguments are all irrelevant though, because
Plaintiffs still must tender the amount due.  As the California Supreme Court held,
a "plaintiff in a quiet title suit is not helped by the weakness of his adversary's title
but must stand upon the strength of his or her own."  *Shimpones*, 219 Cal. at 649.
Nor does it matter if the loan was pooled and sold to investors, because "[e]ven if
the mortgage is extinguished," Plaintiffs here "cannot, without paying [their] debt,
quiet title."  *Ramirez v. SCME Mortg. Bankers*, No. 09-cv-1931, 2010 WL
2839476, at *4 (S.D. Cal. July 19, 2010); *see Pedersen v. Greenpoint Mortg.*
*Funding*, No. s-11-642, 2011 WL 3818560, at *12-13 (E.D. Cal. Aug. 29, 2011)
(dismissing quiet title claim alleging that securitization of loan deprived defendant
of interest in loan because "Plaintiffs have not suggested they are able to tender the
amount due under the note, whether or not it is owed to defendants").

### III.   CONCLUSION

Because there is no subject matter jurisdiction, and because Plaintiffs' claims

1  are barred by *res judicata* and fail to state a claim for relief as a matter of law,

2  Chase respectfully requests that the Court grant its Motion to Dismiss with

3  prejudice.

4

5  Dated:  February 27, 2012                Respectfully submitted,

6                                           BINGHAM McCUTCHEN LLP

7

8                                           By:        /s/ Peter Obstler
                                                       Peter Obstler
9                                           Attorneys for Defendant
                                            JPMorgan Chase Bank, N.A., including as
10                                          acquirer of certain assets and liabilities of
                                            Washington Mutual Bank from the FDIC,
11                                          acting as receiver

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF CHASE MOTION TO DISMISS