1   BINGHAM MCCUTCHEN LLP
    Peter Obstler (sbn 171623)
2   peter.obstler@bingham.com
    Zachary j. Alinder (sbn 209009)
3   zachary.alinder@bingham.com
    Three Embarcadero Center
4   San Francisco, ca  94111-4067
    Telephone: 415.393.2000
5   Facsimile: 415.393.2286

6   Attorneys for Defendant
    Deutsche Bank National Trust Company, in its
7   capacity as trustee of Washington Mutual
    Mortgage Securities Corp. 2005-AR6

8

9              UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| 12 JOSE LUIS ROSAS; STEVEN ZIVANIC; YVONNE ZIVANIC; 13 FERNANDO HINNAOUI; MARTHA V. HINNAOUI, SANDRA ENSHIWAT; 14 ALI REZA AMIRJALALY; KIAN KAMRANI ON BEHALF OF 15 THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, 16 Plaintiff, 17 v. | Case No. CV-11-07692 CAS (CWx) **REPLY IN SUPPORT OF MOTION TO DISMISS AND JOINDER IN CHASE MOTION TO DISMISS BY DEFENDANT DEUTSCHE BANK NATIONAL TRUST COMPANY, IN ITS CAPACITY AS TRUSTEE OF WASHINGTON MUTUAL MORTGAGE SECURITIES CORP. 2005-AR6** |

18  CARNEGIE MORTGAGE, LLC.;
19  CITIMORTGAGE, INC.; CAL-
    WESTERN RECONVEYANCE
20  CORPORATION; WASHINGTON
    MUTUAL BANK, F.A.; JP MORGAN
21  CHASE BANK, N.A.; BANK OF
    AMERICA; QUALITY LOAN
22  SERVICE CORPORATION; FEDERAL
    NATIONAL MORTGAGE
23  ASSOCIATION; INDYMAC BANK
    F.S.B.; DEUTSCHE BANK
24  NATIONAL TRUST COMPANY;
    ATLANTIC & PACIFIC
25  FORECLOSURE SERVICES; WELLS
    FARGO BANK, N.A.; AND DOES 1
26  THROUGH 10, INCLUSIVE,

27             Defendant.

28

Hearing Date: March 12, 2012
Time: 10:00 a.m.
Place: Courtroom 5, 2nd Floor
Judge: Hon. Christina A. Snyder
Complaint filed: August 17, 2011
FAC filed: November 28, 2011

---

REPLY IN SUPPORT OF DBNTC MOTION AND JOINDER IN CHASE MOTION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................1
II.   ARGUMENT.........................................................................................2
      A.   The Legal Standard On A 12(b)(6) Motion ........................................2
      B.   The Zivanic's Claims Are Barred By Res Judicata .............................3
            1.   The Zivanics' Claims Are "Identical" ........................................3
            2.   The Parties Are Identical Or In Privity.....................................5
      C.   Plaintiffs' Opposition Cannot Cure The Fundamental Pleading
           Defects In Their Amended Complaint .....................................................7
            1.   Plaintiffs' Due Process Claims Lack Merit ...............................7
            2.   Plaintiffs Fail To State A Wrongful Foreclosure Claim............8
            3.   Plaintiffs Do Not State A Claim For Quiet Title ....................10
            4.   Plaintiffs' "Quasi-Contract" Claim Is Legally Defective........11
            5.   Plaintiffs Cannot Save Their Defective "No Contract"
                 Claim.......................................................................................13
            6.   Plaintiffs Present No Basis To Prevent Dismissal Of The
                 Declaratory And Injunctive Relief Causes Of Action .............14
III.  CONCLUSION ....................................................................................14

i

REPLY IN SUPPORT OF DBNTC MOTION AND JOINDER IN CHASE MOTION

1

## TABLE OF AUTHORITIES

2

Page

3

**FEDERAL CASES**

4

*Alicea v. GE Money Bank*

5

No. 09-c-91, 2009 WL 2136969 (N.D. Cal. July 16, 2009) .......................... 10

6

*Ashcroft v. Iqbal*

7

129 S. Ct. 1937 (2009) .......................................................................... 2, 3

8

*Aspray v. Fed. Home Loan Mortg. Corp.*
No. CV 11-299, 2011 WL 1532326

9

(C.D. Cal. Apr. 20, 2011) ............................................................. 14

10

*Baidoobonso–Iam v. Bank of Am.*

11

No. 10-cv-9171, 2011 WL 3103165

12

(C.D. Cal. July 25, 2011) ............................................................. 10

13

*Bosinger v. Belden CDT, Inc.*

14

358 Fed. Appx. 812 (9th Cir. 2009) ............................................... 12

15

*Cerecedes v. U.S. Bankcorp*
No. cv-11-219, 2011 WL 2711071

16

(C.D. Cal. July 11, 2011) ............................................................. 9

17

*Cotton v. Federal Land Bank of Columbia*

18

676 F.2d 1368 (11th Cir. 1981), *cert. denied*, 459 U.S. 1041, 103 S.Ct.

19

458, 74 L.Ed.2d 610 (1982) ......................................................... 7

20

*Davenport v. Litton Loan Servicing*
725 F. Supp. 2d 862 (N.D. Cal. 2010) ......................................... 14

21

22

*Escobedo v. Countrywide Home Loans, Inc.*
No. 09-cv-1557, 2009 WL 4981618

23

(S.D. Cal. 2009) ........................................................................... 8

24

*Eubanks v. Federal Deposit Insurance Corp.*

25

977 F.2d 166 (5th Cir. 1992) ....................................................... 7

26

*Gallardo v. Wells Fargo Bank, N.A.*

27

No. cv-10-1441, 2010 WL 4345736

(C.D. Cal. 2010) ........................................................................... 9

28

REPLY IN SUPPORT OF DBNTC MOTION AND JOINDER IN CHASE MOTION

1

## TABLE OF AUTHORITIES
(continued)

2                                                                                          Page

3   *Gospel Missions of America v. City of Los Angeles*
4       328 F. 3d 548 (9th Cir. 2003) ................................................................ 4

5   *Grealish v. Wash. Mut. Bank FA*
        No. 2:08-cv-763, 2009 WL 2170044
6       (D. Utah July 20, 2009) ................................................................ 9, 13

7
    *Henthorn v. Department of Navy*
8       29 F.3d 682 (D.C. 1994) ................................................................ 11

9
    *Javaheri v. JPMorgan Chase Bank*
10      No. 10-cv-8185, 2011 WL 2173786
        (C.D. Cal. June 2, 2011) ................................................................ 14
11

12  *Lampley v. Deutsche Nat. Trust Co.*
        No. 09-367, 2009 WL 1657428 (C.D. Cal. 2009) ................................ 4, 5
13

14  *Lane v. Vitek Real Estate Indus. Group*
        713 F. Supp. 2d 1092 (E.D. Cal. 2010) ............................................ 9, 12
15

16  *Lee v. U.S. Bank*
        No. 10-1434, 2010 WL 2635777 (N.D. Cal. June 30, 2010) ................ 13
17

18  *Mesa Petroleum Co. v. Coniglio*
        787 F.2d 1484 (11th Cir. 1986), *cert. denied*, 107 S.Ct. 876, 93 L.Ed.2d
19      830 (1987) ................................................................ 7

20  *Mohamed v. Jeppesen Dataplan, Inc.*
        579 F.3d 943 (9th Cir. 2009) ................................................................ 2
21

22  *Nguyen v. Wells Fargo Bank, N.A.*
        749 F. Supp. 2d 1022 (N.D. Cal. 2010) ............................................ 9, 10
23

24  *Nordhorn v. Ladish Co.*
        9 F.3d 1402 (9th Cir. 1993) ................................................................ 6, 7
25

26  *Ozogu v. CitiMortgage, Inc.*
        No. CV 10-9687, 2011 WL 4345046
27      (N.D. Cal. Sept. 14, 2011) ................................................................ 7

28

REPLY IN SUPPORT OF DBNTC MOTION AND JOINDER IN CHASE MOTION

1

TABLE OF AUTHORITIES
(continued)

2

Page

3

*Pedersen v. Greenpoint Mortg. Funding*
    No. s-11-642, 2011 WL 3818560 (E.D. Cal. Aug. 29, 2011) ......................... 10

4

5

*Ramirez v. SCME Mortg. Bankers*
    No. 09-cv-1931, 2010 WL 2839476
    (S.D. Cal. July 19, 2010) ................................................................................ 10

6

7

*Romero v. Mortgage Co.*
    No. 10-cv-5833, 2011 WL 2560252 (N.D. Cal. June 28, 2011) .............. 12, 13

8

9

*Rosenfeld v. JPMorgan Chase Bank, N.A.*
    732 F.Supp.2d 952 (N.D. Cal. 2010)................................................................ 9

10

11

*Seamon v. Bell Tel. Co. of Pa.*
    576 F.Supp. 1458 (W.D. Pa. 1983), *aff'd*, 740 F.2d 958 (3d Cir. 1984).......... 7

12

13

*Sprewell v. Golden State Warriors*
    266 F.3d 979 (9th Cir. 2001) ........................................................................... 3

14

15

*Tahoe Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*
    322 F.3d 1064 (9th Cir. 2003) ......................................................................... 5

16

17

*Taylor v. CitiMortgage, Inc.*
    No. 2:10-cv-505, 2010 WL 4683881 (D. Utah Nov. 10, 2010) ..................... 12

18

19

*Total Coverage, Inc. v. Cendant Settlement Services Group*
    252 Fed. Appx. 123 (9th Cir. 2007) ............................................................... 11

20

**CALIFORNIA CASES**

21

22

*Dimock v. Emerald Properties, LLC*
    81 Cal. App. 4th 868 (2000) ...................................................................... 9, 10

23

24

*Mix v. Sodd*
    126 Cal. App. 3d 386 (1981) .......................................................................... 10

25

26

*Nguyen v. Calhoun*
    105 Cal. App. 4th 428 (2003) ......................................................................... 10

27

28

*Shimpones v. Stickney*
    219 Cal. 637 (1934)........................................................................................ 10

REPLY IN SUPPORT OF DBNTC MOTION AND JOINDER IN CHASE MOTION

1

## TABLE OF AUTHORITIES
### (continued)

2
Page

3
**CALIFORNIA STATUTES**

4
CAL. CIV. CODE § 1691(b) ................................................................................ 14

5
CAL. CIV. CODE § 2924(a)(1)............................................................................. 9

6
CAL. CIV. PROC. CODE § 337 ........................................................................... 13

7

8
**OTHER AUTHORITIES**

9
E.D. Cal. Aug. 26, 2011.......................................................................................7

10
Fed. Rule Civ. Proc. 9(b) .................................................................................. 14

11
Rule 12(b)(6)........................................................................................................ 2

12
Rule 60(b) ............................................................................................................ 4

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF DBNTC MOTION AND JOINDER IN CHASE MOTION

1    **I.      INTRODUCTION**

2          As described more fully in the JPMorgan Chase Bank N.A. ("Chase") Reply

3    Memorandum in support of its Motion to Dismiss (Docket No. 132), in which

4    Deutsche Bank National Trust Company ("DBNTC") hereby joins, each of the

5    causes of action asserted against DBNTC in Plaintiffs' First Amended Complaint

6    ("FAC") is barred by the doctrine of *res judicata* and is otherwise fatally defective

7    as a matter of law, requiring dismissal of the entire complaint with prejudice.[1]

8          As a preliminary matter, Plaintiffs' Opposition incorrectly claims that "JP

9    Morgan [Chase] Bank, N.A. … has not filed a responsive pleading to Plaintiffs'

10   First Amended Class Action Complaint…." (Plaintiffs' Opposition to DBNTC

11   Motion to Dismiss ("Opp.") at 1:7-8).[2]  In DBNTC's opening memorandum,

12   DBNTC actually cited to and joined in the arguments made by Chase in its

13   responsive pleading – a Motion to Dismiss filed on January 5, 2012. (See Chase

14   Motion to Dismiss Plaintiffs' FAC, Dkt. No. 94 and DBNTC Motion to Dismiss

15   and Joinder, Dkt No. 95.)[3]  In short, Plaintiffs' initial claim about Chase not filing

16   a responsive pleading is nothing more than fiction, masquerading as fact.

17         Plaintiffs' Opposition does not improve from there.  First, Plaintiffs do not

18   address or distinguish DBNTC's authorities showing that their Complaint is

19   subject to dismissal on *res judicata* grounds.  Instead, they cite to general claim

20   preclusion law that also supports dismissal here, and then misapply the facts to that

21   law.  Second, Plaintiffs' Opposition fails to counter the arguments or distinguish

22   the numerous cases cited by Chase and DBNTC in their Motions to Dismiss the

23

24   [1] Plaintiffs only allege the First, Second, and Eighth through Twelfth Causes of
25   Action Against DBNTC.
     [2] Plaintiffs Opposition To DBNTC's Motion To Dismiss dated Feb. 7, 2012, Dkt.
26   No. 103 ("Opp.").
     [3] Plaintiffs do not object to DBNTC's joinder in the Chase Motion to Dismiss, and
27   no prejudice would result to Plaintiffs in any event from that joinder given the
     overlapping grounds for both Motions.
28

REPLY IN SUPPORT OF DBNTC MOTION AND JOINDER IN CHASE MOTION

1   First, Second, and Eighth through Twelfth Causes of Action to prevent dismissal as

2   a matter of law under Rule 12(b)(6).  As such, Plaintiffs' objective here appears to

3   be getting yet another opportunity to amend their Complaint.  (*See* Opp. at 14:24-

4   15:10.)  For the reasons set forth below, however, the *res judicata* and substantive

5   pleading defects cannot be cured by amendment.

6   **II.    ARGUMENT**

7        Plaintiffs' Opposition largely fails to take on DBNTC's Motion to Dismiss

8   the First, Second, and Eighth through Twelfth Causes of Action (which are the

9   only causes of action alleged against DBNTC) based on *res judicata* and failure to

10  state a claim under Rule 12(b)(6).  To the extent Plaintiffs do make a coherent

11  argument in opposition, neither the law nor the facts support Plaintiffs' assertions.[4]

12       **A.    The Legal Standard On A 12(b)(6) Motion**

13       As an initial matter, Plaintiffs state the incorrect legal standard for the

14  determination of a motion to dismiss for failure to state a claim for relief under

15  Rule 12(b)(6).  Plaintiffs claim that "factual allegations in the complaint must be

16  treated as true, ***even if the allegations seem incredible***."  (Opp. at 2:6-7 (emphasis

17  supplied).)  Plaintiffs' cited Ninth Circuit case – *Mohamed v. Jeppesen Dataplan,*

18  *Inc.*, 579 F.3d 943, 949 (9th Cir. 2009) – says nothing of the sort, and the Supreme

19  Court disagrees as well.[5]

20       To survive a motion to dismiss, a complaint must plead sufficient factual

21  matter, if accepted as true, to state a claim to relief that is plausible on its face.  *See*

22  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Instead, the pleading standard

23

24  [4] Plaintiffs' standing argument on pages 4-5 of their Opposition does not have any
25  relevance to or impact on the DBNTC motion to dismiss.  DBNTC does not
    challenge standing, but rather the pleading defects in each cause of action and the
26  fact that these claims are barred by the doctrine of *res judicata*.
    [5] Plaintiffs' remaining citations do not support the contention that the Court should
27  accept "incredible" allegations as true either.  (Opp. at 2:1-15.)  Instead, they allow
    a court to draw *reasonable* inferences, not incredible ones.
28

REPLY IN SUPPORT OF DBNTC MOTION AND JOINDER IN CHASE MOTION

1    incorporates two important, related principles.  First, a complaint cannot rest on

2    conclusory assertions, nor simply allege legal conclusions masquerading as facts.

3    *See Iqbal*, 129 S. Ct. 1937, 1950 (2009) (courts are "not bound to accept as true a

4    legal conclusion couched as a factual allegation") (internal citation omitted);

5    *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (court need

6    not accept "merely conclusory, unwarranted deductions of fact" or "naked

7    assertions devoid of further factual development").  Second, Plaintiffs' allegations

8    must state a claim that is ***plausible***.  In other words, "incredible" or "doubtful"

9    allegations don't work.  Nor is it enough to allege specific facts unless those facts

10   plausibly add up to a claim for relief.  *See Iqbal*, 129 S. Ct. at 1949-50 ("only a

11   complaint that states a plausible claim for relief survives a motion to dismiss").

12   Here, Plaintiffs utterly fail to allege plausible facts in their Complaint sufficient to

13   state a claim for any relief.

14          **B.     The Zivanic's Claims Are Barred By *Res Judicata***

15          While Plaintiffs did not substantively oppose the Chase Motion to Dismiss

16   made on the same *res judicata* grounds (Plaintiffs' Opposition to Chase Motion to

17   Dismiss, Dkt. No. 99, at 1:25-2:18), Plaintiffs raise two arguments in opposition to

18   DBNTC's Motion to Dismiss on *res judicata* grounds, both of which fail as a

19   matter of law.

20          **1.     The Zivanics' Claims Are "Identical"**

21          First, Plaintiffs claim that the first and second lawsuits by the Zivanics are

22   not the same because "when Plaintiffs filed their action in [a] sister court,

23   Defendants had not committed HAMP violations."  (Opp. at 11:20-23.)  While

24   DBNTC agrees that no Defendant had or has committed any violation of any law,

25   including HAMP, and though Plaintiffs' argument is irrelevant to a *res judicata*

26   analysis, the HAMP program was initiated by the Department of Treasury in

27   March of 2009 prior to the first Zivanic lawsuit.  *See* "Relief for Responsible

28   Homeowners: Treasury Announces Requirements for the Making Home

3

REPLY IN SUPPORT OF DBNTC MOTION AND JOINDER IN CHASE MOTION

1    Affordable Program," March 4, 2009, available at http://www.treasury.gov/press-

2    center/press-releases/Pages/200934145912322.aspx.  Plaintiffs' timing theory is

3    both irrelevant and wrong on the facts.

4         In any event, the test is not whether HAMP was in effect, but "(1) whether

5    rights or interests established in the prior judgment would be destroyed or impaired

6    by prosecution of the second action; (2) whether substantially the same evidence is

7    presented in the two actions; (3) whether the two suits involve infringement of the

8    same right; and (4) whether the two suits arise out of the same 'transactional

9    nucleus of facts.'"  *Lampley v. Deutsche Nat. Trust Co.*, No. 09-367, 2009 WL

10   1657428, *2 (C.D. Cal. 2009) (quoting *Gospel Missions of America v. City of Los

11   Angeles*, 328 F. 3d 548, 555 (9th Cir. 2003)).  Plaintiffs focus only on the fourth

12   prong of the test, stating that is the "predominant approach."  (Opp. at 11:26-

13   12:26.)  That focus makes no difference – each of the four prongs of the *res

14   judicata* test is easily met here.

15        *First*, DBNTC's interest in the finality of the prior dismissal would be

16   destroyed by the second action.  Indeed, Judge Conti already established this in his

17   denial of the Zivanics' request for relief from the dismissal under Rule 60(b),

18   ruling that Defendants "would be prejudiced if the Court were to re-open a

19   foreclosure case that was dismissed in July [of 2010]."  Request for Judicial Notice

20   In Support of Motion to Dismiss ("RJN"), Dkt. No. 96, Ex. I.  That prejudice

21   would be further amplified if the Zivanics could re-open the case now – a year later

22   in a new district.

23        *Second*, this Action would be based on the same allegations and evidence as

24   its predecessor.  Both Actions are based on the Zivanics' unsuccessful attempt to

25   modify their home mortgage, ending in the foreclosure on their home in Saratoga,

26   California.  *Compare* FAC, ¶ 27 *with* RJN, Ex. G at ¶¶ 1 & 71-75.  There can be no

27   doubt that two Actions involving the same loan on the same home with the same

28   borrowers and the same resulting foreclosure with nearly identical causes of action

4

REPLY IN SUPPORT OF DBNTC MOTION AND JOINDER IN CHASE MOTION

1   would be based on the same evidence.

2        ***Third***, both Actions involve the alleged infringement of the same right.  The

3   Zivanics claim in both Actions that they originally had a deal with WaMu to

4   modify their home mortgage loan, but that Chase later denied their loan

5   modification and together with DBNTC foreclosed on their home.  *Compare* FAC,

6   ¶¶ 99-101 *with* RJN, Ex. G at ¶¶ 1 & 71-75.  Plaintiffs' argument that "the causes

7   of actions were indifferent [sic] with the one at hand" also misses the mark.  (Opp.

8   at 11:23-25.)  Even though the Zivanics add some new causes of action to this

9   second Complaint, new or different "causes of action" make no difference for *res*

10  *judicata* purposes.  *See Tahoe Sierra Preservation Council, Inc. v. Tahoe Regional*

11  *Planning Agency*, 322 F.3d 1064, 1077-78 (9th Cir. 2003).  The underlying facts

12  are the same and purportedly resulted in violations of the same contractual and

13  statutory rights.

14       ***Fourth***, there can be no doubt both suits arise from the same nucleus of

15  facts.  Both Complaints allege nearly identical claims arising out of the same

16  alleged conduct by WaMu, Chase and DBNTC regarding the foreclosure on the

17  same loan with the same two borrowers on the same residential property.  All of

18  the currently alleged misconduct occurred prior to the filing of the original Action,

19  and therefore could have been (and indeed was) litigated in the original Action.

20       When two lawsuits concern the conduct of the same lenders with respect to a

21  particular loan transaction, courts hold that the lawsuits share an identity of claims

22  for res judicata.  *See, e.g., Lampley*, 2009 WL 1657428 at * 2.  The Zivanics'

23  claims, the only claims asserted in the FAC against DBNTC, are no exception.

24               **2.**     **The Parties Are Identical Or In Privity**

25       Plaintiffs' second argument is that "Mr. Zivanic was not a privy to the last

26  complaint…[a]lthough he was a title holder of the property that was subject to the

27  last litigation…."  (Opp. at 11:23-24).  The argument that a married couple should

28  have two bites at the same apple, simply by having one try the first case, is

REPLY IN SUPPORT OF DBNTC MOTION AND JOINDER IN CHASE MOTION

1  disingenuous at best.  "Privity" of parties exists where parties are "so closely

2  aligned in interest that one is the virtual representative of the other." *Nordhorn v.*

3  *Ladish Co.*, 9 F.3d 1402, 1405 (9th Cir. 1993).   Not only were the interests of

4  Steven and Yvonne Zivanic so closely aligned in the first case that they filed

5  *together* in the second case, but in addition, Mr. Zivanic was directly involved in

6  the first case, and was included in nearly every substantive factual allegation in

7  that first Complaint.  (RJN, Ex. G.)

8       For example, Paragraph 2 of the 2010 Complaint alleges that "Plaintiff and

9  her husband, Steven Zivanic, are the 'Borrowers' (Trustors) of the 'Deed of

10  Trust'" for the subject property.  (RJN, Ex. G at ¶ 2.)  The Complaint further

11  alleges that Steven and Yvonne Zivanic began looking for a new residence, and so

12  "Mr. Zivanic signed this [Master Loan] application" with WaMu on December 15,

13  2004.  (*Id.* at ¶ 18)  The Complaint also claims that "Plaintiff and her husband"

14  thought they would get certain loan terms but "Plaintiff and her husband should not

15  have been approved for a loan with these terms…."  (*Id.* at ¶¶ 22-23.)  Later,

16  "Plaintiff and her husband were finding it exceedingly difficult to make their

17  monthly payments, and they began to talk to WaMu representatives regarding

18  forbearance."  (*Id.* at ¶ 29.)  The Complaint then alleges that "Plaintiff's husband,

19  Steven Zivanic, sent the materials that WaMu required for consideration of a loan

20  modification agreement," and after approval of a special forbearance agreement,

21  "Mr. Zivanic made the...payments to WaMu on: 12/2/08, 1/9/09 and 2/10/09,

22  respectively."  (*Id.* at ¶¶ 36-39.)  Finally, when they learned that the subject

23  property had been sold "to Defendant Deutsche [Bank National Trust Company] at

24  public auction," "[o]n August 15, 2009, Mr. Zivanic sent [] forbearance

25  materials…to Chase/WaMu," and later "Plaintiff and her husband sent yet another

26  loan package to WaMu and/or Chase in November of 2009."  (*Id.*, ¶¶ 45-50.).

27       There can be no dispute that Yvonne Zivanic is a named plaintiff in both

28  lawsuits, and that her husband, Steven Zivanic, was directly involved in both

REPLY IN SUPPORT OF DBNTC MOTION AND JOINDER IN CHASE MOTION

1  lawsuits and is named in this one.  Their interests as the married, co-borrowers of

2  the subject property easily make them so closely aligned in interest that "one is the

3  virtual representative of the other."  *Nordhorn*, 9 F.3d at 1405; *see also Mesa*

4  *Petroleum Co. v. Coniglio*, 787 F.2d 1484, 1489-90 (11th Cir. 1986) (plaintiff-wife

5  was precluded from litigating claims her husband previously had litigated), *cert.*

6  *denied*, 107 S.Ct. 876, 93 L.Ed.2d 830 (1987); *Eubanks v. Federal Deposit*

7  *Insurance Corp.*, 977 F.2d 166, 170 (5th Cir. 1992) (same); *Cotton v. Federal*

8  *Land Bank of Columbia*, 676 F.2d 1368, 1369-71 (11th Cir. 1981) (plaintiff-

9  husband was precluded from litigating claims his wife previously had litigated),

10  *cert. denied*, 459 U.S. 1041, 103 S.Ct. 458, 74 L.Ed.2d 610 (1982); *Seamon v. Bell*

11  *Tel. Co. of Pa.*, 576 F.Supp. 1458, 1460-61 (W.D. Pa. 1983) (same), *aff'd*, 740 F.2d

12  958 (3d Cir. 1984).[6]

13  
      **C.**      **Plaintiffs' Opposition Cannot Cure The Fundamental
Pleading Defects In Their Amended Complaint**

14  
15        Plaintiffs' FAC suffers from a number of fatal pleading defects.  Plaintiffs'

16  Opposition fails to provide any basis for the Court to believe that they could ever

17  cure these defects through amendment.

18        **1.**      **Plaintiffs' Due Process Claims Lack Merit**

19        Plaintiffs' first and second causes of action for alleged "due process"

20  violations both fail to state a claim because DBNTC is not a state actor and HAMP

21  does not create a protected property interest.  *See, e.g., Ozogu v. CitiMortgage,*

22  *Inc.*, No. CV 10-9687, 2011 WL 2940391, at *6 (C.D. Cal. July 19, 2011); *Neal v.*

23  *E-Trade Bank*, 2011 WL 3813158 at *3 (E.D. Cal. Aug. 26, 2011).  Plaintiffs'

24  _____

25  [6] Plaintiffs spend nearly two pages discussing the propriety of constitutional
challenges.  (Opp. at 12:16-14:23.)  This discussion has no relevance to any of the

26  issues before the Court.  Plaintiffs cannot escape *res judicata* because they now
allege a due process claim.  The cases they cite and discuss do not stand for that

27  proposition in any case.  And, as discussed below, Plaintiffs' due process claims
are all legally defective and should be dismissed with prejudice.

28

REPLY IN SUPPORT OF DBNTC MOTION AND JOINDER IN CHASE MOTION

1   Opposition to DBNTC's Motion to Dismiss fails to take on either argument and the

2   motion should be granted on that basis alone.  The law is clear that Plaintiffs

3   cannot bootstrap their defective HAMP claims into equally defective due process

4   claims.

5              **2.       Plaintiffs Fail To State A Wrongful Foreclosure Claim**

6         Plaintiffs' eighth cause of action for wrongful foreclosure fails because

7   Plaintiffs do not allege tender of the amount of indebtedness due.  Plaintiffs do not

8   attempt to refute this, nor can they.  Instead, Plaintiffs argue that DBNTC is

9   "impermissibly attempting to argue the facts" and that "there was no duty to

10  tender" because they should have received a loan modification and therefore the

11  foreclosure was "void."  (Opp. at 2:17-3:7).  Both arguments fail.

12        First, DBNTC has not argued any "facts," and has no need to do so, because

13  the only relevant fact is that Plaintiffs do not, and cannot, allege tender in the

14  Complaint, as they must to state a valid wrongful foreclosure claim.  *See* FAC, ¶¶

15  277-299.

16        Second, Plaintiffs' claim that the foreclosure was "void" also fails.  (Opp. at

17  3:1-4:11.)  Plaintiffs concoct two arguments to support the claim that the

18  foreclosure sale was void.  The first is that Chase didn't offer Plaintiffs a loan

19  modification even though they allege they were eligible, and "[t]his makes the

20  NOD and NOS void not voidable so there is no duty to tender."  (Opp. at 3:1-7).

21  That argument fails because the law is settled that HAMP does not require

22  servicers to modify eligible loans.  As the Court in *Escobedo* held:

23        [T]he [HAMP] Agreement does not require that [the lender]
           modify eligible loans. The Agreement sets forth Home
24         Affordable Modification Program Guidelines. The Guidelines
           set forth eligibility requirements and states: "Participating
25         servicers are required to consider all eligible loans under the
           program guidelines unless prohibited by the rules of the
26         applicable PSA and/or other investor servicing agreements."
           (Compl., Ex. 1 at 42) (emphasis added). The Agreement does
27         not state that [the lender] must modify all mortgages that meet
           the eligibility requirements.

28

                                           8

1    *Escobedo v. Countrywide Home Loans, Inc.*, No. 09-cv-1557, 2009 WL 4981618,

2    *3 (S.D. Cal. 2009) (emphasis in original); *accord Gallardo v. Wells Fargo Bank,*

3    *N.A.*, No. cv-10-1441, 2010 WL 4345736, at *3 (C.D. Cal. 2010) (quoting

4    *Escobedo* and holding that "HAMP merely set forth guidelines and does not state

5    that the defendant had to 'modify all mortgages that [met] the eligibility

6    requirements.'").

7         Plaintiffs further argue that the foreclosure is void because allegedly only

8    WaMu, not Chase, had the right as lender to begin foreclosure proceedings.  (Opp.

9    at 3:9-19.)  Not only do Plaintiffs fail to explain coherently how this argument

10   applies to DBNTC, but this argument also fails for two additional reasons.  First,

11   Chase acquired most of the assets of WaMu, including WaMu's loans, so Chase is

12   the successor-in-interest to the loans.  *See, e.g., Grealish v. Wash. Mut. Bank FA*,

13   No. 2:08-cv-763, 2009 WL 2170044, *2 (D. Utah July 20, 2009) (finding that

14   "Most of [WaMu's] assets, including the Loans, were sold by the FDIC to Chase");

15   *accord Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F.Supp.2d 952, 963 (N.D.

16   Cal. 2010) (dismissing wrongful foreclosure claim with similar argument that

17   WaMu was lender).  Second, California law permits a "trustee, mortgagee or

18   beneficiary *or any of their authorized agents*" to initiate foreclosure.  CAL CIV.

19   CODE § 2924(a)(1) (emphasis added).  Indeed, "'[t]here is no stated requirement in

20   California's non–judicial foreclosure scheme that requires a beneficial interest in

21   the Note to foreclose."  *Cerecedes v. U.S. Bankcorp*, No. cv-11-219, 2011 WL

22   2711071, at *5 (C.D. Cal. July 11, 2011).  Therefore, even assuming that Chase or

23   DBNTC lacked a beneficial interest in the Zivanic's note, such an interest is

24   unnecessary "to commence a non–judicial foreclosure sale."  *Lane v. Vitek Real*

25   *Estate Indus. Group*, 713 F. Supp. 2d 1092, 1099 (E.D. Cal. 2010).[7]

26

27   [7] Plaintiffs' citation to *Dimock v. Emerald Properties, LLC*, 81 Cal. App. 4th 868,
     876-88 (2000) is inapposite.  (Opp. at 3:20).  *Dimock* "did not address the tender

28                                                      (Footnote Continued on Next Page.)

9

1        In short, even if Plaintiffs challenge the foreclosure based on irregularities in

2   the foreclosure process, the law still requires Plaintiffs to allege tender.  *Alicea v.*

3   *GE Money Bank*, No. 09-c-91, 2009 WL 2136969 at *3 (N.D. Cal. July 16, 2009).

4   "The rules which govern tenders are strict and are strictly applied," and therefore

5   require dismissal of Plaintiffs' wrongful foreclosure claim here.  *Nguyen v.*

6   *Calhoun*, 105 Cal. App. 4th 428, 439 (2003).

7        **3.     Plaintiffs Do Not State A Claim For Quiet Title**

8        Plaintiffs' failure to allege that they have discharged their debt is fatal to

9   their ninth cause of action to "Quiet Title."  *Shimpones v. Stickney*, 219 Cal. 637,

10  649 (1934) (holding that it is "settled in California that a mortgagor cannot quiet

11  his title against the mortgagee without paying the debt secured."); *accord*

12  *Baidoobonso–Iam v. Bank of Am.*, No. 10-cv-9171, 2011 WL 3103165, at *7 (C.D.

13  Cal. July 25, 2011).

14       Plaintiffs seek to escape this result by arguing that the true lender is an

15  investment trust and that the loan was "pooled and sold to investors many times

16  over."  (Opp. at 9:13-11:12.)  These arguments are all irrelevant though, because

17  Plaintiffs still must tender the amount due.  As the California Supreme Court held,

18  a "plaintiff in a quiet title suit is not helped by the weakness of his adversary's title

19  but must stand upon the strength of his or her own."  *Shimpones*, 219 Cal. at 649.

20  Nor does it matter if the loan was pooled and sold to investors, because "[e]ven if

21  the mortgage is extinguished," Plaintiffs here "cannot, without paying [their] debt,

22  quiet title."  *Ramirez v. SCME Mortg. Bankers*, No. 09-cv-1931, 2010 WL

23  2839476, at *4 (S.D. Cal. July 19, 2010); *see Pedersen v. Greenpoint Mortg.*

24  _____

(Footnote Continued from Previous Page.)

25

26  rule, but held that a foreclosure sale by a former trustee, after a new trustee had
been substituted in and the substitution had been recorded, was void and not
merely voidable."  *Nguyen v. Wells Fargo Bank, N.A.*, 749 F. Supp. 2d 1022, 1034

27  (N.D. Cal. 2010).  As established above, Plaintiffs' arguments for why the
foreclosure was void both lack merit, so like *Nguyen*, *Dimock* does not apply.

28

REPLY IN SUPPORT OF DBNTC MOTION AND JOINDER IN CHASE MOTION

1   *Funding*, No. s-11-642, 2011 WL 3818560, at *12–*13 (E.D. Cal. Aug. 29, 2011)

2   (dismissing quiet title claim alleging that securitization of loan deprived defendant

3   of interest in loan because "Plaintiffs have not suggested they are able to tender the

4   amount due under the note, whether or not it is owed to defendants").

5                    **4.      Plaintiffs' "Quasi-Contract" Claim Is Legally Defective**

6           Plaintiffs' "Quasi-Contract" claim fails because Plaintiffs allege that there is

7   an express written contract – the mortgage contract – between the Parties.  (FAC, ¶

8   4, 96 and 98.)  Under California law, an action in quasi-contract does not lie "when

9   an enforceable, binding agreement exists defining the rights of the parties."  *Total*

10  *Coverage, Inc. v. Cendant Settlement Services Group*, 252 Fed. Appx. 123, 126

11  (9th Cir. 2007).  Plaintiffs' Opposition plays fast and loose with their own factual

12  allegations, stating that there was "no valid contract between [the] Zivanics and

13  Chase," and then claiming that it is Chase and DBNTC's burden to "offer

14  documents substantiating said notion."  (Opp. at 5:15-16.)

15          But the FAC and judicially noticed documents tell a different story.  The

16  FAC expressly states that the Zivanics entered the mortgage agreement with

17  WaMu, and "WAMU was later acquired by defendant Chase," and that the

18  Zivanics' mortgage loan was sold "to defendant Chase," and that Chase then "sold

19  it to Deutsche."  (FAC, ¶¶ 36, 97-101.)  A similar story unfolds in the Zivanics'

20  previously dismissed 2010 Complaint.  (*See* RJN Ex. G at ¶¶ 25-50.)  In the prior

21  Complaint, the Zivanics alleged that WaMu was the lender, that Chase purchased

22  most of WaMu's assets, and that the Zivanics sent correspondence to "WAMU

23  and/or CHASE," including an accepted "Special Forbearance Agreement" attached

24  to the Complaint with the Deed of Trust, and that they had been told that "WAMU

25  had become CHASE."  (*Id*.)  This is a far cry from the claim that no valid

26  mortgage contract exists with Chase.  Plaintiffs are bound by the allegations in

27  their Complaints, and the Court should ignore inconsistent "facts" claimed in their

28  Opposition.  *See, e.g., Henthorn v. Department of Navy*, 29 F.3d 682, 688 (D.C.

1   1994) (contradictory allegations made in opposing motion to dismiss "most

2   certainly may not be considered when the facts they contain contradict those

3   alleged in the complaint.").

4          Plaintiffs' Opposition raises two additional arguments to save their quasi-

5   contract claim.  Both arguments relate to Chase, rather than DBNTC, and fail for

6   that reason alone.  They also lack merit.  First, Plaintiffs argue that Chase does not

7   have "standing to enforce" the note, because Chase is the servicer and beneficial

8   interest in the note had been transferred "to an investment bank."  (Opp. at 5:11-

9   6:3.)  Putting aside the contradictory allegations in their FAC, Plaintiffs' theory

10  appears to be that their mortgage was assigned to a mortgage trust pool, and

11  therefore, Chase allegedly lost its interest in the mortgage, and Plaintiffs'

12  obligation to make their mortgage payments was extinguished.  (*See id.; see also*

13  FAC, ¶ 311.)  Numerous courts have considered and rejected this theory.  *See, e.g.,*

14  *Lane v. Vitek Real Estate Indus.Group*, 713 F. Supp. 2d 1092, 1099 (E.D. Cal.

15  2010) ("The argument that parties lose their interest in a loan when it is assigned to

16  a trust pool has … been rejected by many district courts.").  Simply put, "[t]here is

17  no legal authority that the sale or pooling of investment interests in an underlying

18  note can relieve borrowers of their mortgage obligations or extinguish a secured

19  party's rights to foreclose on secured property.'"  *Taylor v. CitiMortgage, Inc.*, No.

20  2:10-cv-505, 2010 WL 4683881, at *3 (D. Utah Nov. 10, 2010).

21         Plaintiffs' second defective argument is that the "equitable doctrine of unjust

22  enrichment applies" because Chase was not entitled to retain Plaintiffs' mortgage

23  payments.  (Opp. at 14:15:15-9.)  As a preliminary matter, Plaintiffs' cause of

24  action for "unjust enrichment" should be rejected because the weight of authority

25  and better reasoned cases hold that "there is no cause of action for unjust

26  enrichment" under California law.  *Bosinger v. Belden CDT, Inc.*, 358 Fed. Appx.

27  812, 815 (9th Cir. 2009); *accord Romero v. Mortgage Co.*, No. 10-cv-5833, 2011

28  WL 2560252 at *3 (N.D. Cal. June 28, 2011).  In addition, Plaintiffs' unjust

12

REPLY IN SUPPORT OF DBNTC MOTION AND JOINDER IN CHASE MOTION

1    enrichment claim makes no sense on its face.  The Zivanics "default[ed]" on their

2    mortgage (FAC, ¶ 101) and could only make "timely monthly payments if their

3    loan [was] modified with a reasonable payment plan[]."  (*Id*., ¶ 100.)  Nor could

4    the speculation that Chase may not have "actually forwarded payments from [the]

5    Zivanics to the beneficial owner of the loan" support an unjust enrichment claim.

6    (Opp. at 15:6-9.)  Even under Plaintiffs' implausible theory, retention of payments

7    by Chase would have been at the expense of the purported "beneficial owner," not

8    the Zivanics.  *See, e.g., Lee v. U.S. Bank*, No. 10-1434, 2010 WL 2635777, at *12

9    (N.D. Cal. June 30, 2010) (dismissing claim that lender "was 'unjustly enriched'

10   each time [borrower] made his monthly mortgage payment").

### 5.    Plaintiffs Cannot Save Their Defective "No Contract" Claim

12           Similarly, Plaintiffs' eleventh cause of action for "No Contract" is fatally

13   defective for at least five reasons.  ***First***, like the quasi-contract claim, Plaintiffs'

14   arguments all relate to Chase, rather than DBNTC, and in any event, where

15   Plaintiffs have expressly alleged that there is a mortgage contract governing the

16   relationship between Plaintiffs and Chase, they cannot credibly assert a "No

17   Contract" Claim.   (FAC, ¶ 4, 96 and 98.)  ***Second***, even if Plaintiffs could avoid

18   their underlying mortgage contract, Plaintiffs provide no basis in their opposition

19   to toll the statute of limitations, which would have run years ago.  (*Id*., ¶ 98

20   (Zivanics entered their mortgage contract in 2004)); *see also* CAL. CIV. PROC.

21   CODE § 337.  ***Third***, even if the claim was timely, claims about WaMu's conduct

22   and an alleged failure of "meeting of the minds" with WaMu in 2004 (Opp. at 7:3-

23   4) can only be pursued against the FDIC, who retained liabilities against WaMu,

24   not Chase or DBNTC.  *Grealish v. Wash. Mut. Bank FA*, No. 2:08-cv-763, 2009

25   WL 2170044, at *2 (D.Utah July 20, 2009) (granting motion to dismiss WaMu

26   claims, because Chase did not succeed to WaMu's liabilities, so Plaintiff could

27   only pursue remedies "against the FDIC Receiver.").  ***Fourth***, to the extent

28

13

1  Plaintiffs seek rescission of the underlying mortgage contract, Plaintiffs failed to

2  allege tender of the amount due, which is required by California law.  *Davenport v.*

3  *Litton Loan Servicing*, 725 F. Supp. 2d 862, 880 (N.D. Cal. 2010); *see also* CAL.

4  CIV. CODE § 1691(b).  ***Fifth***, Plaintiffs' Opposition vaguely claims that their "No

5  Contract" claim is based on purported "underwriting fraud" and other alleged

6  nondisclosures by WaMu leading to no "meeting of minds" (Opp. at 7:4-9:11), but

7  if so, this claim fails to plead fraud with specificity under Fed. Rule Civ. Proc.

8  9(b).  *See Javaheri v. JPMorgan Chase Bank*, No. 10-cv-8185, 2011 WL 2173786,

9  at *3 (C.D. Cal. June 2, 2011) (dismissing similar contract claim on 9(b) grounds).

10          **6.      Plaintiffs Present No Basis To Prevent Dismissal Of The**
                    **Declaratory And Injunctive Relief Causes Of Action**

11          Plaintiffs do not oppose DBNTC's motion to dismiss the twelfth cause of

12  action.  They cannot dispute that their purported twelfth cause of action for

13  declaratory and injunctive relief describe two remedies, rather than causes of

14  action in California.  *See, e.g., Aspray v. Fed. Home Loan Mortg. Corp.*, No. cv-

15  11-299, 2011 WL 1532326, at *6 (C.D. Cal. Apr. 20, 2011).  Whether Plaintiffs

16  can establish entitlement to these forms of relief is irrelevant here – these simply

17  are not independent causes of action and should be dismissed.

18  **III.   CONCLUSION**

19          Accordingly, DBNTC respectfully requests that the Court dismiss all Causes

20  of Action alleged against it by Plaintiffs in the above-captioned action with

21  prejudice.

22

23  DATED:  February 27, 2012                    BINGHAM MCCUTCHEN LLP

24                                          By: _____/s/ Peter Obstler_____

25                                                    Peter Obstler
                                                   Attorneys for Defendant
26                                         Deutsche Bank National Trust Company,
                                             in its capacity as Trustee of Washington
27                                         Mutual Mortgage Securities Corp. 2005-AR6

28
                                          14