MAYER BROWN LLP
John Nadolenco (SBN 181128)
*jnadolenco@mayerbrown.com*
Steven E. Rich (SBN 198412)
*srich@mayerbrown.com*
350 South Grand Avenue, 25th floor
Los Angeles, CA 90071-1503
Telephone: (213) 229-9500
Facsimile:  (213) 625-0248

Attorneys for Defendant
CITIMORTGAGE, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE LUIS ROSAS; STEVEN ZIVANIC; YVONNE ZIVANIC; FERNANDO HINNAOUI; MARTHA V. HINNAOUI, SANDRA ENSHIWAT; ALI REZA AMIRJALAIY; KIAN KAMRANI ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiffs,<br><br>v.<br><br>CARNEGIE MORTGAGE, LLC.; CITIMORTGAGE, INC.; CAL-WESTERN RECONVEYANCE CORPORATION; WASHINGTON MUTUAL BANK, F.A.; JP MORGAN CHASE BANK, N.A.; BANK OF AMERICA; QUALITY LOAN SERVICE CORPORATION; FEDERAL NATIONAL MORTGAGE ASSOCIATION; INDYMAC BANK F.S.B.; DEUTSCHE BANK NATIONAL TRUST COMPANY; ATLANTIC & PACIFIC FORECLOSURE SERVICES; WELLS FARGO BANK, N.A.; AND DOES 1 THROUGH 10, INCLUSIVE,<br><br>Defendants. | Case No. CV-11-07692 CAS (CWx)<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CITIMORTGAGE, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Date:  May 21, 2012<br>Time:  10:00 a.m.<br>Judge: Hon. Christina A. Snyder<br><br>Second Amended Complaint filed: April 3, 2012 |

## INTRODUCTION

Like the First Amended Complaint ("FAC"), plaintiffs' Second Amended Complaint ("SAC") centers around allegations that Citi breached the Servicer Participation Agreement that it entered into with Fannie Mae. But like plaintiffs' opposition to Citi's motion to dismiss the FAC, plaintiffs spend much of their opposition to this motion making a claim that is nowhere to be found in the complaint. Specifically, plaintiffs argue that Rosas "entered into" a "Trial Period Plan" or "TPP" with Citi. Opp. 9, 10; *see id.* at 11 ("Plaintiff was accepted into the Trial Period Plan"). Form documents authored by the federal government as part of HAMP, TPPs are temporary arrangements contemplating that the borrower will make reduced monthly mortgage payments while the mortgage servicer reviews the borrower's financial situation to determine whether the borrower qualifies for a permanent loan modification under HAMP. Rich Decl., Ex. E at 5, 15–18. According to plaintiffs, "[t]he FAC [sic] alleges" that Citi "breach[ed] … the TPP" it supposedly sent to Rosas by not permanently modifying his loan. Opp. 9; *see id.* at 15 ("Plaintiff Has Stated a Claim for Breach of … the Trial Period Plan").

Tellingly, plaintiffs do not cite any allegations supporting their statement that the complaint asserts a claim for breach of a TPP. While the complaint suggests that Citi offered a trial loan modification under an apparently non–HAMP program, (SAC at 23, 36), the complaint neither alleges that Citi sent Rosas a TPP nor asserts a claim for breach of a TPP or any other trial modification. On the contrary, the complaint alleges that Citi "did not offer" Rosas "a trial period modification" under HAMP (*id.* at 21); that "[n]one" of the trial modifications that defendants supposedly sent "were through HAMP" (*id.* at 36); and "[s]pecifically exclude[s] from the class" borrowers who "received a trial or permanent HAMP modification." *Id.* at 48. The complaint alleges a breach of contract claim, but that claim is based on the "HAMP Contract." *Id.* at 50. The complaint defines "HAMP Contract" to mean the Servicer Participation Agreement (*id.* at 7)—not a TPP.

This is the second time that plaintiffs have advanced TPP–based arguments in their briefs despite failing to allege breach of TPP claims in their complaints. But "'it is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss.'" *Petrie v. Elec. Game Card Inc.*, 2011 WL 165402, at *4 n.2 (C.D. Cal. Jan. 12, 2011); *see Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) ("'In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a … memorandum in opposition to a defendant's motion to dismiss'"); *Nguyen v. JP Morgan Chase Bank*, 2012 WL 294936, at *3 (C.D. Cal. Feb. 1, 2012) ("Plaintiff cannot defend against a motion to dismiss by relying on new allegations in her Opposition that are absent from the current complaint"). Despite the Court's order giving plaintiffs leave to replead, plaintiffs have again violated this settled rule. The Court should therefore disregard the breach of TPP claim asserted in plaintiffs' brief.

The remainder of plaintiffs' brief is more of the same. Failing to include a single cite to any paragraph or page number in the complaint, plaintiffs instead repeatedly refer to unspecified passages in the inoperative "FAC." Opp. 9–10, 12, 14. They purport to have asserted claims that are absent from the complaint. *Id.* at 12 (asserting that they have "alleged … statutory violations under the California Consumer Protection Law"); *id.* at 6 (alleging that Citi breached TPP "by untruthfully reporting to the credit reporting agencies" that Rosas was "delinquent in his mortgage payments"). They claim, without citation, that Citi made arguments that it did not make. *E.g.*, *id.* at 15 ("Contrary to Defendant [sic] assertions, the TPP" is "valid"). And they support their breach of SPA claim by relying on a Ninth Circuit decision that the Supreme Court reversed more than one year ago. *Id.* at 12–13 (citing *Cnty. of Santa Clara v. Astra USA*, 588 F.3d 1237 (9th Cir. 2009), *rev'd*, 131 S. Ct. 1342 (2011). In short, plaintiffs offer no basis to salvage their complaint.

# ARGUMENT

## I. Rosas's Breach of Contract Claim (Count 1) Should Be Dismissed.

Citi cited in its opening brief more than two dozen decisions by district courts in this Circuit dismissing breach of SPA claims—including this Court's decision dismissing the FAC's breach of SPA claim. Mem. 7 & n.2. Those decisions, like dozens more from other jurisdictions, recognize that the SPA does not express clear intent to grant the millions of borrowers who have applied for loan modifications under HAMP the right to enforce its terms. Moreover, borrowers could not have reasonably relied on any such intent because the SPA does not require Citi to modify all eligible loans. Thus, Rosas may not evade the lack of a private right of action under HAMP by suing for breach of the SPA.

Just as they did in opposing dismissal of the breach of SPA claim asserted in the FAC, plaintiffs argue that this overwhelming majority view is wrong. Opp. to Fannie Mae MTD at 16–18 (Dkt. 167). Plaintiffs explain that one of the first cases to conclude that the SPA does not confer rights on third parties—*Escobedo v. Countrywide Home Loans*, 2009 WL 4981618 (S.D. Cal. Dec. 15, 2009)—was resolved "without the benefit of" a Ninth Circuit decision issued a week earlier, *County of Santa Clara v. Astra USA*, 588 F.3d 1237 (9th Cir. 2009). According to plaintiffs, *Escobedo* "carried through to several subsequent cases" that adopted *Escobedo*'s conclusion without considering the impact of *Santa Clara*.

As Citi pointed out in seeking dismissal of the FAC, plaintiffs' reliance on *Santa Clara* falters for a simple reason: the Supreme Court reversed the Ninth Circuit's decision more than one year ago. *Astra USA v. Santa Clara Cnty.*, 131 S. Ct. 1342 (2011). It is difficult to understand how plaintiffs could continue to rely on the Ninth Circuit's decision (which is distinguishable in any event) when defendants have repeatedly informed plaintiffs about its reversal.

Plaintiffs also cite two federal decisions in support of their view: *Reyes v. Saxon Mortg. Servs.*, 2009 WL 3738177 (S.D. Cal. Nov. 5, 2009), and *Marques v.*

*Wells Fargo Home Mortg.*, 2010 WL 3212131 (S.D. Cal. Aug. 12, 2010). Opp. to Fannie Mae MTD at 15, 19. While *Reyes* denied a motion to dismiss a breach of SPA claim before the Supreme Court's decision in *Astra*, the same judge who decided *Reyes* subsequently reversed course and dismissed identical claims. *See Wilson v. GMAC Mortg. LLC*, 2010 WL 5387829, at *1 (S.D. Cal. Dec. 22, 2010); *Villa v. Wells Fargo Bank*, 2010 WL 935680, at *2 (S.D. Cal. Mar. 15, 2010). As for *Marques*, its "analysis of the third–party beneficiary issue was dicta" because the court dismissed plaintiff's claim. *Ansanelli v. JP Morgan Chase Bank*, 2011 WL 1134451, at *6 (N.D. Cal. Mar. 28, 2011). Moreover, "the case on which the *Marques* court relied"—the Ninth Circuit's decision in *Santa Clara*—"has since been reversed by the Supreme Court." *Cade v. BAC Home Loans Servicing*, 2011 WL 2470733, at *3 (S.D. Tex. June 20, 2011). "Most every case that has cited *Marques* since has disagreed with it." *Coulibaly v. J.P. Morgan Chase Bank*, 2011 WL 3476994, at *15 n.20 (D. Md. Aug. 8, 2011). As the Seventh Circuit recently explained, "since [the Supreme Court's decision in] *Astra*, district courts have correctly applied the Court's decision to foreclose claims by homeowners seeking HAMP modifications as third–party beneficiaries of SPAs." *Wigod v. Wells Fargo Bank*, 673 F.3d 547, 559 n.4 (7th Cir. 2012); *see Miller v. Chase Home Fin.*, 2012 WL 1345834 (11th Cir. Apr. 19, 2012).

Finally, plaintiffs cite several California state–court cases. Opp. to Fannie Mae MTD at 19–21. One of those cases—*Martinez v. Socoma Cos.*, 11 Cal. 3d 394 (1974)—supports Citi. *Martinez* held that contracts between the government and employers under which the employers agreed to provide job training and employment did not make individuals who were allegedly qualified for employment under the contracts third–party beneficiaries. The court explained that the contracts sought to further "a larger public purpose"—reducing unemployment and its attendant ills—rather than merely providing jobs to particular people. *Id.* at 401. Similarly, HAMP's purpose was to "stabilize the housing market" as a whole

rather than modify loans held by particular borrowers. Rich Decl., Ex. D at 1.

The other two state–court cases cited by plaintiffs apply California state law. *See Zigas v. Superior Court*, 120 Cal. App. 3d 827, 831 (1981); *Shell v. Schmidt*, 126 Cal. App. 2d 279 (1954). But as even plaintiffs concede, "[f]ederal law controls the interpretation" of the SPA. Opp. 12; *see* Rich Decl., Ex. D § 11.A. Regardless, *Zigas* and *Shell*—both of which predate the Supreme Court's decision in *Santa Clara*—are distinguishable. Private suits could not disrupt performance of the contracts at issue in *Zigas* because "no governmental administrative procedure was provided for the resolution of disputes" (120 Cal. App. 3d at 838), unlike the procedures set forth in the SPA governing disputes between Fannie Mae and Citi. Rich Decl., Ex. D § 7. And unlike the "narrow and specific" *Zigas* contract designed to "*only* benefit [certain] tenants" (120 Cal. App. 3d at 835), HAMP's broad purpose includes "stabiliz[ing] the [entire] housing market." Rich Decl., Ex. D at 1. In *Shell*, the contracts empowered the government to obtain compensation for distribution directly to identified third–party beneficiaries. *See Martinez*, 11 Cal. 3d at 403. No similar provision exists in the SPA. Accordingly, the California state–court cases cited by plaintiffs do nothing to undermine the overwhelming body of authority holding that third–party borrowers may not sue for breach of the SPA.

## II. Rosas's Implied Covenant Claim (Count 2) Should Be Dismissed.

Rosas's claim for breach of an implied covenant in the SPA fails because Rosas is not a third–party beneficiary of the SPA. Mem. 10. Plaintiffs respond that "BOA dishonestly breached" the TPP. Opp. 18. Putting aside the fact that Citi is not Bank of America, the complaint does not allege that Citi entered into a TPP with Rosas, much less breached any implied covenant found therein.

## III. Rosas's Cal. Civ. Code § 2923.5 Claim (Count 3) Should Be Dismissed.

Plaintiffs simply ignore Citi's lead argument in support of its motion to dismiss Rosas's Section 2923.5 claim—that the statute does not apply to loans that

(like Rosas's loan) were recorded after 2007. Mem. 11. Instead, plaintiffs assert that "Defendants did not contact Plaintiff" to "explore options to avoid foreclosure." Opp. 20. As Citi demonstrated in its opening brief (Mem. 12–13), the complaint tells a different story, alleging that Citi "[r]epeatedly" discussed loan modification options with Rosas. Accordingly, and for the other reasons set forth in Citi's opening brief, Rosas's Section 2923.5 claim should be dismissed.

### IV. Rosas's Wrongful Foreclosure Claim (Count 4) Should Be Dismissed.

Plaintiffs implicitly abandon Rosas's wrongful foreclosure claim by failing even to mention it, presumably because the complaint does not allege that Citi completed any foreclosure. For that and other reasons cited in Citi's opening brief, Rosas's wrongful foreclosure claim should be dismissed. Mem. 13–16.

### V. Rosas's Quiet Title Claim (Count 5) Should Be Dismissed.

Rosas's quiet title claim fails because, among other reasons, Rosas transferred title to his property long before this suit. Mem. 16. Plaintiffs ignore that fatal flaw in their theory, instead asserting that they need not tender payment on their loan because Citi supposedly lacks a right to enforce any foreclosure. Opp. 22–24. But plaintiffs cite no case supporting their position on tender in the context of a quiet title claim, much less address the many cases cited by Citi. And plaintiffs' claims about Citi's ability to enforce their loan are both belied by an allonge to Rosas's note (Rich Decl., Ex. B), and irrelevant under governing law. Mem. 14–15.

### VI. Rosas's Quasi–Contract Claim (Count 6) Should Be Dismissed.

Plaintiffs fail to address authority cited by Citi holding that "quasi–contract"—*i.e.*, unjust enrichment—is not an independent cause of action under California law. Mem. 19 & n.4. Nor do plaintiffs contest that the theory underlying their quasi–contract claim—that the alleged securitization of Rosas's loan extinguished his obligations to make monthly mortgage payments—fails as a matter of law. *Id.* at 19–20. Accordingly, for the reasons set forth in Citi's opening

brief, Rosas's quasi–contract claim should be dismissed.

## VII. Rosas's No–Contract Claim (Count 7) Should Be Dismissed.

Citi cited three independent grounds for dismissing Rosas's no–contract claim. Mem. 20–21. Plaintiffs ignore those arguments. Instead, plaintiffs assert that Citi "committed underwriting fraud." Opp. 21. However, plaintiffs admit that Citi did not originate their loan. *Id.* at 23 (Rosas's loan documents "identif[y] Carnigie [sic] as the Lender"); *accord* Rich Decl., Exs. A–B. Plaintiffs do not explain how Citi could have committed "underwriting fraud" without originating Rosas's loan.

## VIII. Rosas's Declaratory/Injunctive Claim (Count 8) Should Be Dismissed.

Rosas's claim for declaratory and injunctive relief should be dismissed because, as this Court held in dismissing those claims from the FAC, "'declaratory and injunctive relief are prayers for relief, not causes of action.'" Dkt. 134 at 11. Plaintiffs' "response" is non-responsive, misquoting Citi as making arguments that it did not make. Opp. 14. Therefore, for the reasons stated in Citi's opening brief (Mem. 22), Rosas's declaratory/injunctive claim should be dismissed.

## CONCLUSION

Citi respectfully requests that the Court dismiss the second amended complaint against it with prejudice.

Dated: May 7, 2012                                    MAYER BROWN LLP


By:      /s/ Steven E. Rich
         Steven E. Rich
Attorneys for Defendant CitiMortgage, Inc.