1    BINGHAM MCCUTCHEN LLP
     Peter Obstler (SBN 171623)
2    peter.obstler@bingham.com
     Zachary J. Alinder (SBN 209009)
3    zachary.alinder@bingham.com
     Three Embarcadero Center
4    San Francisco, ca  94111-4067
     Telephone: 415.393.2000
5    Facsimile: 415.393.2286

6    Attorneys for Defendant
     Deutsche Bank National Trust Company, in its
7    capacity as trustee of Washington Mutual
     Mortgage Securities Corp. 2005-AR6
8

9                    UNITED STATES DISTRICT COURT

10                   CENTRAL DISTRICT OF CALIFORNIA

11

12   JOSE LUIS ROSAS; STEVEN              Case No. CV-11-07692 CAS (CWx)
     ZIVANIC; YVONNE ZIVANIC;
13   FERNANDO HINNAOUI; MARTHA
     V. HINNAOUI, SANDRA ENSHIWAT;
14   ALI REZA AMIRJALALY; KIAN           **REPLY IN SUPPORT OF**
     KAMRANI ON BEHALF OF                **MOTION TO DISMISS AND**
15   THEMSELVES AND ALL OTHERS           **JOINDER IN CHASE MOTION**
     SIMILARLY SITUATED,                 **TO DISMISS BY DEFENDANT**
16                                       **DEUTSCHE BANK NATIONAL**
                                         **TRUST COMPANY, IN ITS**
17            Plaintiff,                 **CAPACITY AS TRUSTEE OF**
         v.                              **WASHINGTON MUTUAL**
18                                       **MORTGAGE SECURITIES**
                                         **CORP. 2005-AR6**
19   CARNEGIE MORTGAGE, LLC.;
     CITIMORTGAGE, INC.; CAL-
20   WESTERN RECONVEYANCE
     CORPORATION; WASHINGTON             Hearing Date: May 21, 2012
21   MUTUAL BANK, F.A.; JP MORGAN        Time: 10:00 a.m.
     CHASE BANK, N.A.; BANK OF           Place: Courtroom 5, 2nd Floor
22   AMERICA; QUALITY LOAN               Judge: Hon. Christina A. Snyder
     SERVICE CORPORATION; FEDERAL        Complaint filed: August 17, 2011
23   NATIONAL MORTGAGE                   FAC filed: November 28, 2011
     ASSOCIATION; INDYMAC BANK           SAC filed: April 2, 2012
24   F.S.B.; DEUTSCHE BANK
     NATIONAL TRUST COMPANY;
25   ATLANTIC & PACIFIC
     FORECLOSURE SERVICES; WELLS
26   FARGO BANK, N.A.; AND DOES 1
     THROUGH 10, INCLUSIVE,
27
              Defendant.
28

REPLY IN SUPPORT OF DBNTC MOTION AND JOINDER IN CHASE MOTION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

Page

I.  INTRODUCTION ............................................................... 1

II.  ARGUMENT .................................................................... 2

    A.  The Legal Standard On A 12(b)(6) Motion ......................... 2

    B.  The Zivanics' Claims Are Barred By Res Judicata ............. 3

        1.  The Zivanics' Claims Are "Identical" ...................... 3

        2.  The Parties Are Identical Or In Privity ..................... 5

    C.  Plaintiffs' Opposition Cannot Cure The Fundamental Pleading Defects In Their Amended Complaint ................................. 7

        1.  Plaintiffs Fail To State A Wrongful Foreclosure Claim ........... 7

        2.  Plaintiffs' "Quasi-Contract" Claim Is Legally Defective ......... 9

        3.  Plaintiffs Cannot Save Their Defective "No Contract" Claim ...................................................... 12

        4.  Plaintiffs Do Not State A Claim For Quiet Title ................. 13

        5.  Plaintiffs Present No Basis To Prevent Dismissal Of The Declaratory And Injunctive Relief Causes Of Action ............. 13

III.  CONCLUSION .............................................................. 14

i

1

## TABLE OF AUTHORITIES

2

Page(s)

3

**FEDERAL CASES**

4

*Alicea v. GE Money Bank*

5

No. 09-c-91, 2009 WL 2136969 (N.D. Cal. July 16, 2009)................................9

6

*Ashcroft v. Iqbal*

7

129 S. Ct. 1937 (2009).................................................................... 2, 3

8

*Aspray v. Fed. Home Loan Mortg. Corp.*

No. cv-11-299, 2011 WL 1532326 (C.D. Cal. Apr. 20, 2011) ...................... 13

9

*Baidoobonso–Iam v. Bank of Am.*

No. 10-cv-9171, 2011 WL 3103165 (C.D. Cal. July 25, 2011) ...................... 13

10

11

*Bosinger v. Belden CDT, Inc.*

12

358 Fed. Appx. 812 (9th Cir. 2009) .............................................. 11

13

*Cerecedes v. U.S. Bankcorp*

14

No. cv-11-219, 2011 WL 2711071 (C.D. Cal. July 11, 2011)...........................9

15

*Cotton v. Fed. Land Bank of Columbia*

16

676 F.2d 1368 (11th Cir. 1981), *cert. denied*, 459 U.S. 1041, 103 S.Ct.

458, 74 L.Ed.2d 610 (1982).................................................................7

17

18

*Davenport v. Litton Loan Servicing*

19

725 F. Supp. 2d 862 (N.D. Cal. 2010)............................................ 12

20

*Escobedo v. Countrywide Home Loans, Inc.*

No. 09-cv-1557, 2009 WL 4981618 (S.D. Cal. 2009) .......................................8

21

22

*Eubanks v. Fed. Deposit Ins. Corp.*

977 F.2d 166 (5th Cir. 1992) ...........................................................7

23

*Gallardo v. Wells Fargo Bank, N.A.*

24

No. cv-10-1441, 2010 WL 4345736 (C.D. Cal. 2010)......................................8

25

*Gospel Missions of Am. v. City of L.A.*

26

328 F. 3d 548 (9th Cir. 2003) ...........................................................4

27

*Grealish v. Wash. Mut. Bank FA*

28

No. 2:08-cv-763, 2009 WL 2170044 (D. Utah July 20, 2009) ................... 8, 12

ii

1

## TABLE OF AUTHORITIES
(continued)

2

Page(s)

3

*Henthorn v. Dep't of Navy*
4
   29 F.3d 682 (D.C. Cir. 1994).............................................................. 10

5
*Javaheri v. JPMorgan Chase Bank*
   No. 10-cv-8185, 2011 WL 2173786 (C.D. Cal. June 2, 2011) ...................... 12
6

7
*Lampley v. Deutsche Nat. Trust Co.*
   No. 09-367, 2009 WL 1657428 (C.D. Cal. 2009)......................................... 4, 5
8

9
*Lane v. Vitek Real Estate Indus. Group*
   713 F. Supp. 2d 1092 (E.D. Cal. 2010) ....................................................... 9, 11

10

11
*Lee v. U.S. Bank*
   No. 10-1434, 2010 WL 2635777 (N.D. Cal. June 30, 2010) .................... 11, 12

12

13
*Mesa Petroleum Co. v. Coniglio*
   787 F.2d 1484 (11th Cir. 1986), *cert. denied*, 107 S.Ct. 876, 93 L.Ed.2d
14
   830 (1987)................................................................................................6

15
*Mohamed v. Jeppesen Dataplan, Inc.*
   579 F.3d 943 (9th Cir. 2009) .............................................................................2
16

17
*Nguyen v. Wells Fargo Bank, N.A.*
   749 F. Supp. 2d 1022 (N.D. Cal. 2010)............................................................9
18

19
*Nordhorn v. Ladish Co.*
   9 F.3d 1402 (9th Cir. 1993) ......................................................................... 5, 6

20

21
*Pedersen v. Greenpoint Mortg. Funding*
   No. s-11-642, 2011 WL 3818560 (E.D. Cal. Aug. 29, 2011) .......................... 13

22

23
*Ramirez v. SCME Mortg. Bankers*
   No. 09-cv-1931, 2010 WL 2839476 (S.D. Cal. July 19, 2010) ...................... 13

24

25
*Romero v. Mortgage Co.*
   No. 10-cv-5833, 2011 WL 2560252 (N.D. Cal. June 28, 2011) ...................... 11

26
*Rosenfeld v. JPMorgan Chase Bank, N.A.*
   732 F.Supp.2d 952 (N.D. Cal. 2010)................................................................8
27

28

<u>TABLE OF AUTHORITIES</u>
(continued)

Page(s)

*Seamon v. Bell Tel. Co. of Pa.*
   576 F.Supp. 1458 (W.D. Pa. 1983), *aff'd*, 740 F.2d 958 (3d Cir. 1984) ............7

*Sprewell v. Golden State Warriors*
   266 F.3d 979 (9th Cir. 2001) ...............................................................3

*Tahoe Sierra Preservation Council, Inc. v. Tahoe Reg'l Planning Agency*
   322 F.3d 1064 (9th Cir. 2003) ............................................................5

*Taylor v. CitiMortgage, Inc.*
   No. 2:10-cv-505, 2010 WL 4683881 (D. Utah Nov. 10, 2010) .......................11

*Total Coverage, Inc. v. Cendant Settlement Servs. Group*
   252 Fed. Appx. 123 (9th Cir. 2007) ....................................................9

CALIFORNIA CASES

*Dimock v. Emerald Properties, LLC*
   81 Cal. App. 4th 868 (2000) ..............................................................9

*Nguyen v. Calhoun*
   105 Cal. App. 4th 428 (2003) ............................................................9

*Shimpones v. Stickney*
   219 Cal. 637 (1934) ......................................................................13

CALIFORNIA STATUTES

CAL. CIV. CODE § 1691(b) ....................................................................12

CAL CIV. CODE § 2924(a)(1)...................................................................9

CAL. CIV. PROC. CODE § 337 ................................................................12

OTHER AUTHORITIES

Fed. Rule Civ. Proc. 9(b) ...................................................................12

Fed. Rule Civ. Proc. Rule 12(b)(6)..........................................................2

Fed. Rule Civ. Proc. Rule 60(b)..............................................................4

iv

1    **I.    INTRODUCTION**

2           As described more fully in the JPMorgan Chase Bank N.A. ("Chase")

3    Reply Memorandum in support of its Motion to Dismiss (Docket No. 170), in

4    which Deutsche Bank National Trust Company, in its capacity as trustee of

5    Washington Mutual Mortgage Securities Corp. 2005-AR6 ("DBNTC") hereby

6    joins, each of the causes of action asserted against DBNTC in Plaintiffs' Second

7    Amended Complaint ("SAC") is barred by the doctrine of *res judicata* and is

8    otherwise fatally defective as a matter of law, requiring dismissal of the entire

9    complaint with prejudice.[1]

10          As a preliminary matter, Plaintiffs' Opposition incorrectly claims that "JP

11   Morgan [Chase] Bank, N.A. … has not filed a responsive pleading to Plaintiffs'

12   First Amended Class Action Complaint…."  (Plaintiffs' Opposition to DBNTC

13   Motion to Dismiss ("Opp.") at 1:8-9).[2]  In DBNTC's opening memorandum,

14   DBNTC actually cited to and joined in the arguments made by Chase in its

15   responsive pleading – a Motion to Dismiss filed on April 19, 2012. (*See* Chase

16   Motion to Dismiss Plaintiffs' SAC, Dkt. No. 153 and DBNTC Motion to Dismiss

17   and Joinder, Dkt No. 157.)[3]  In short, Plaintiffs' initial claim about Chase not filing

18   a responsive pleading is nothing more than fiction, masquerading as fact.

19          Plaintiffs' Opposition does not improve from there.  First, as discussed in

20   detail in the Chase Motion and Reply, Plaintiffs' amendment of their class

21   allegations excludes the Zivanics, the only plaintiffs with any claim against

22   DBNTC, from the class.  (*See* Chase Motion to Dismiss Plaintiffs' SAC, Dkt. No.

23   _____

24   [1] Plaintiffs only allege the Fourth through Eighth Causes of Action against
     DBNTC.
25   [2] Plaintiffs Opposition To DBNTC's Motion To Dismiss dated April 30, 2012,
     Dkt. No. 165 ("Opp.").
26   [3] Plaintiffs do not object to DBNTC's joinder in the Chase Motion to Dismiss, and
27   no prejudice would result to Plaintiffs in any event from that joinder given the
     overlapping grounds for both Motions.
28

1

153 at 17:14-27 and Chase Reply, Dkt No. 170 at 5:19-6:11); *Haas v. Pittsburgh Nat. Bank*, 526 F.2d 1083, 1095 (3d Cir. 1975) (class action cannot be maintained when no nominal plaintiff has standing). Plaintiffs also do not address or distinguish DBNTC's authorities showing that their Complaint is subject to dismissal on *res judicata* grounds. Instead, they cite to general claim preclusion law that also supports dismissal here, and then misapply the facts to that law. Finally, Plaintiffs' Opposition fails to counter the arguments or distinguish the numerous cases cited by Chase and DBNTC in their Motions to Dismiss the Fourth through Eighth Causes of Action to prevent dismissal as a matter of law under Rule 12(b)(6). None of these substantive pleading defects be cured by amendment.

## II.    ARGUMENT

Plaintiffs' Opposition largely fails to take on DBNTC's Motion to Dismiss the Fourth through Eighth Causes of Action (which are the only causes of action alleged against DBNTC) based on *res judicata* and failure to state a claim under Rule 12(b)(6). Nor do Plaintiffs address the fact that the Zivanics' claims no longer fall within the amended class definition.[4] To the extent Plaintiffs do make arguments in opposition, neither the law nor the facts support their assertions.[5]

### A.    The Legal Standard On A 12(b)(6) Motion

As an initial matter, Plaintiffs state the incorrect legal standard for the determination of a motion to dismiss for failure to state a claim for relief under Rule 12(b)(6). Plaintiffs claim that "factual allegations in the complaint must be treated as true, ***even if the allegations seem incredible***." (Opp. at 2:6-7 (emphasis

---

[4] DBNTC explicitly incorporates Chase's Motion to Dismiss papers on this point (Dkt. No. 153 at 17:14-27 and Dkt No. 170 at 5:19-6:11) establishing that the Zivanics – the only plaintiffs asserting any claim against Chase or DBNTC in this Action – are not class members based on the amended class definition in the SAC.
[5] Plaintiffs' standing argument on pages 6-7 of their Opposition does not have any relevance to or impact on the DBNTC motion to dismiss. DBNTC does not challenge standing, but rather the pleading defects in each cause of action and the fact that these claims are barred by the doctrine of *res judicata*.

REPLY IN SUPPORT OF DBNTC MOTION AND JOINDER IN CHASE MOTION

1   supplied).)  Plaintiffs' cited Ninth Circuit case – *Mohamed v. Jeppesen Dataplan,*

2   *Inc.*, 579 F.3d 943, 949 (9th Cir. 2009) – says nothing of the sort, and the Supreme

3   Court disagrees as well.[6]

4          To survive a motion to dismiss, a complaint must plead sufficient factual

5   matter, if accepted as true, to state a claim to relief that is plausible on its face.  *See*

6   *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  The pleading standard

7   incorporates two important, related principles.  First, a complaint cannot rest on

8   conclusory assertions, nor simply allege legal conclusions couched as facts.  *See*

9   *Iqbal*, 129 S. Ct. 1937, 1950 (2009) (courts are "not bound to accept as true a legal

10  conclusion couched as a factual allegation") (internal citation omitted); *Sprewell v.*

11  *Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (court need not accept

12  "merely conclusory, unwarranted deductions of fact" or "naked assertions devoid

13  of further factual development").  Second, Plaintiffs' allegations must state a claim

14  that is ***plausible***.  In other words, "incredible" or "doubtful" allegations don't

15  work.  Nor is it enough to allege specific facts unless those facts plausibly add up

16  to a claim for relief.  *See Iqbal*, 129 S. Ct. at 1949-50 ("only a complaint that states

17  a plausible claim for relief survives a motion to dismiss").  Here, Plaintiffs utterly

18  fail to allege plausible facts in their Complaint sufficient to state a claim for relief.

19      **B.     The Zivanics' Claims Are Barred By *Res Judicata***

20         Plaintiffs raise two arguments in opposition to DBNTC's Motion to Dismiss

21  on *res judicata* grounds, both of which fail as a matter of law.

22             **1.     The Zivanics' Claims Are "Identical"**

23         First, Plaintiffs claim that the first and second lawsuits by the Zivanics are

24  not the same because "when Plaintiffs filed their action in [a] sister court,

25  _____

26  [6] Plaintiffs' remaining citations do not support the contention that the Court should

27  accept "incredible" allegations as true either.  (Opp. at 4:6-18.)  Instead, they allow
    a court to draw *reasonable* inferences, not incredible ones.

28

3

1    Defendants had not committed HAMP violations." (Opp. at 13:23-24.) While

2    DBNTC agrees that no Defendant has committed any violation of any law,

3    including under HAMP, and though Plaintiffs' argument is irrelevant to a *res*

4    *judicata* analysis, the HAMP program was initiated by the Department of Treasury

5    in March of 2009 prior to the first Zivanic lawsuit. *See* "Relief for Responsible

6    Homeowners: Treasury Announces Requirements for the Making Home

7    Affordable Program," March 4, 2009, available at http://www.treasury.gov/press-

8    center/press-releases/Pages/200934145912322.aspx. Plaintiffs' timing theory is,

9    therefore, both irrelevant and wrong on the facts.

10         In any event, the test is not whether HAMP was in effect, but "(1) whether

11   rights or interests established in the prior judgment would be destroyed or impaired

12   by prosecution of the second action; (2) whether substantially the same evidence is

13   presented in the two actions; (3) whether the two suits involve infringement of the

14   same right; and (4) whether the two suits arise out of the same 'transactional

15   nucleus of facts.'" *Lampley v. Deutsche Nat. Trust Co.*, No. 09-367, 2009 WL

16   1657428, *2 (C.D. Cal. 2009) (quoting *Gospel Missions of Am. v. City of L.A.*, 328

17   F. 3d 548, 555 (9th Cir. 2003)). Plaintiffs focus only on the fourth prong of the

18   test, stating that is the "predominant approach." (Opp. at 13:18-14:24.) That focus

19   makes no difference – each of the four prongs of the *res judicata* test is easily met

20   here.

21         *First*, DBNTC's interest in the finality of the prior dismissal would be

22   destroyed by the second action. Indeed, Judge Conti already established this in his

23   denial of the Zivanics' request for relief from the dismissal under Rule 60(b),

24   ruling that Defendants "would be prejudiced if the Court were to re-open a

25   foreclosure case that was dismissed in July [of 2010]." (Request for Judicial

26   Notice In Support of Motion to Dismiss ("RJN"), Dkt. No. 156-1, Ex. J.) That

27   prejudice would be further amplified if the Zivanics could re-open the case now – a

28   year later in a new district.

REPLY IN SUPPORT OF DBNTC MOTION AND JOINDER IN CHASE MOTION

*Second*, this Action would be based on the same allegations and evidence as its predecessor.  Both Actions are based on the Zivanics' unsuccessful attempt to modify their home mortgage, ending in the foreclosure on their home in Saratoga, California.  (*Compare* SAC at 12:17-20 *with* RJN, Ex. H at ¶¶ 1, 71-75.)  There can be no doubt that two Actions involving the same loan on the same home with the same borrowers and the same resulting foreclosure with nearly identical causes of action would be based on the same evidence.

*Third*, both Actions involve the alleged infringement of the same right.  The Zivanics claim in both Actions that they originally had a deal with WaMu to modify their home mortgage loan, but that Chase later denied their loan modification and together with DBNTC foreclosed on their home.  (*Compare* SAC at 26:2-9 *with* RJN, Ex. H at ¶¶ 1, 71-75.)  Plaintiffs' argument that "the causes of actions were indifferent [sic] with the one at hand" also misses the mark.  (Opp. at 13:25-26.)  Even though the Zivanics add some new causes of action to this second Complaint, new or different "causes of action" make no difference for *res judicata* purposes.  *See Tahoe Sierra Preservation Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077-78 (9th Cir. 2003).  The underlying facts are the same and purportedly resulted in violations of the same contractual and statutory rights.

*Fourth*, there can be no doubt both suits arise from the same nucleus of facts.  Both Complaints allege nearly identical claims arising out of the same alleged conduct by WaMu, Chase and DBNTC regarding the foreclosure on the same loan with the same two borrowers on the same residential property.  All of the currently alleged misconduct occurred prior to the filing of the original Action, and therefore could have been (and indeed was) litigated in the original Action.

When two lawsuits concern the conduct of the same lenders with respect to a particular loan transaction, courts hold that the lawsuits share an identity of claims for *res judicata*.  *See, e.g., Lampley*, 2009 WL 1657428 at * 2.  The Zivanics'

5

claims, the only claims asserted in the SAC against DBNTC, are no exception.

### 2.    The Parties Are Identical Or In Privity

Plaintiffs' second argument is that "Mr. Zivanic was not a privy to the last complaint…[a]lthough he was a title holder of the property that was subject to the last litigation…." (Opp. at 13:24-26.)  The argument that a married couple should have two bites at the same apple, simply by having only one try the first case, is disingenuous at best.  "Privity" of parties exists where parties are "so closely aligned in interest that one is the virtual representative of the other." *Nordhorn v. Ladish Co.*, 9 F.3d 1402, 1405 (9th Cir. 1993).  Not only were the interests of Steven and Yvonne Zivanic so closely aligned in the first case that they filed **together** in the second case, but in addition, Mr. Zivanic was directly involved in the first case, and was included in nearly every substantive factual allegation in that first Complaint.  (RJN, Ex. H.)

For example, Paragraph 2 of the 2010 Complaint alleges that "Plaintiff and her husband, Steven Zivanic, are the 'Borrowers' (Trustors) of the 'Deed of Trust'" for the subject property.  (RJN, Ex. H at ¶ 2.)  The Complaint further alleges that Steven and Yvonne Zivanic began looking for a new residence, and so "Mr. Zivanic signed this [Master Loan] application" with WaMu on December 15, 2004.  (*Id*. at ¶ 18.)  The Complaint also claims that "Plaintiff and her husband" thought they would get certain loan terms but "Plaintiff and her husband should not have been approved for a loan with these terms…."  (*Id*. at ¶¶ 22-23.)  Later, "Plaintiff and her husband were finding it exceedingly difficult to make their monthly payments, and they began to talk to WaMu representatives regarding forbearance."  (*Id*. at ¶ 29.)  The Complaint then alleges that "Plaintiff's husband, Steven Zivanic, sent the materials that WaMu required for consideration of a loan modification agreement," and after approval of a special forbearance agreement, "Mr. Zivanic made the...payments to WaMu on: 12/2/08, 1/9/09 and 2/10/09, respectively."  (*Id*. at ¶¶ 36-39.)  Finally, when they learned that the subject

6

1  property had been sold "to Defendant Deutsche [Bank National Trust Company] at

2  public auction," "[o]n August 15, 2009, Mr. Zivanic sent [] forbearance

3  materials…to Chase/WaMu," and later "Plaintiff and her husband sent yet another

4  loan package to WaMu and/or Chase in November of 2009." (*Id.*, ¶¶ 45-50.).

5        There can be no dispute that Yvonne Zivanic is a named plaintiff in both

6  lawsuits, and that her husband, Steven Zivanic, was directly involved in both

7  lawsuits and is named in this one.  Their interests as the married, co-borrowers of

8  the subject property easily make them so closely aligned in interest that "one is the

9  virtual representative of the other." *Nordhorn*, 9 F.3d at 1405; *see also Mesa*

10 *Petroleum Co. v. Coniglio*, 787 F.2d 1484, 1489-90 (11th Cir. 1986) (plaintiff-wife

11 was precluded from litigating claims her husband previously had litigated), *cert.*

12 *denied*, 107 S.Ct. 876, 93 L.Ed.2d 830 (1987); *Eubanks v. Fed. Deposit Ins. Corp.*,

13 977 F.2d 166, 170 (5th Cir. 1992) (same); *Cotton v. Fed. Land Bank of Columbia*,

14 676 F.2d 1368, 1369-71 (11th Cir. 1981) (plaintiff-husband was precluded from

15 litigating claims his wife previously had litigated), *cert. denied*, 459 U.S. 1041,

16 103 S.Ct. 458, 74 L.Ed.2d 610 (1982); *Seamon v. Bell Tel. Co. of Pa.*, 576 F.Supp.

17 1458, 1460-61 (W.D. Pa. 1983) (same), *aff'd*, 740 F.2d 958 (3d Cir. 1984).[7]

18     **C.    Plaintiffs' Opposition Cannot Cure The Fundamental
            Pleading Defects In Their Amended Complaint**

19

20        Plaintiffs' SAC suffers from a number of additional fatal pleading defects.

21 Plaintiffs' Opposition fails to provide any basis for the Court to believe that they

22 could ever cure these defects through amendment.

23

24 _____

25 [7] Plaintiffs spend nearly two pages discussing the propriety of constitutional
   challenges.  (Opp. at 14:26-16:10.)  This discussion has no relevance to any of the
26 issues before the Court, especially in light of this Court's prior dismissal with
   prejudice of Plainitfs' due process challenge.  (March 12, 2012, Civil Minutes -
27 General, Dkt. No. 134 at 8.)  Plaintiffs cannot escape the *res judicata* doctrine
   based on dismissed due process claims.

28

### 1.     Plaintiffs Fail To State A Wrongful Foreclosure Claim

Plaintiffs' fourth cause of action for wrongful foreclosure fails because Plaintiffs do not allege tender of the amount of indebtedness due.  Plaintiffs do not attempt to refute this, nor can they.  Instead, Plaintiffs argue that DBNTC is "impermissibly attempting to argue the facts" and that "there was no duty to tender" because they should have received a loan modification and therefore the foreclosure was "void."  (Opp. at 4:20-5:8).  Both arguments fail.

First, DBNTC has not argued any "facts," and has no need to do so, because the only relevant fact is that Plaintiffs do not, and cannot, allege tender in the Complaint, as they must to state a valid wrongful foreclosure claim.  (*See* SAC at 55:26-59:6.)

Second, Plaintiffs' claim that the foreclosure was "void" also fails.  (Opp. at 5:2-6:11.)  Plaintiffs concoct two arguments to support the claim that the foreclosure sale was void.  The first is that Chase didn't offer Plaintiffs a loan modification even though they allege they were eligible, and "[t]his makes the NOD and NOS void not voidable so there is no duty to tender."  (Opp. at 5:2-8.)  That argument fails because the law is settled that HAMP does not require servicers to modify eligible loans.  As the Court in *Escobedo* held:

> [T]he [HAMP] Agreement does not require that [the lender] modify eligible loans. The Agreement sets forth Home Affordable Modification Program Guidelines. The Guidelines set forth eligibility requirements and states: 'Participating servicers are required to consider all eligible loans under the program guidelines unless prohibited by the rules of the applicable PSA and/or other investor servicing agreements.' (Compl., Ex. 1 at 42) (emphasis added). The Agreement does not state that [the lender] must modify all mortgages that meet the eligibility requirements.

*Escobedo v. Countrywide Home Loans, Inc.*, No. 09-cv-1557, 2009 WL 4981618, *3 (S.D. Cal. 2009) (emphasis in original); *accord Gallardo v. Wells Fargo Bank, N.A.*, No. cv-10-1441, 2010 WL 4345736, at *3 (C.D. Cal. 2010) (quoting *Escobedo* and holding that "HAMP merely set forth guidelines and does not state

8

1   that the defendant had to 'modify all mortgages that [met] the eligibility

2   requirements.'").

3          Plaintiffs further argue that the foreclosure is void because allegedly only

4   WaMu, not Chase, had the right as lender to begin foreclosure proceedings.  (Opp.

5   at 5:10-20.)  Not only do Plaintiffs fail to explain how this argument applies to

6   DBNTC, but this argument also fails for two additional reasons.  First, Chase

7   acquired most of the assets of WaMu, including WaMu's loans, so Chase is the

8   successor-in-interest to the loans.  *See, e.g., Grealish v. Wash. Mut. Bank FA*, No.

9   2:08-cv-763, 2009 WL 2170044, *2 (D. Utah July 20, 2009) (finding that "Most of

10  [WaMu's] assets, including the Loans, were sold by the FDIC to Chase"); *accord*

11  *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F.Supp.2d 952, 963 (N.D. Cal.

12  2010) (dismissing wrongful foreclosure claim with similar argument that WaMu

13  was lender).  Second, California law permits a "trustee, mortgagee or beneficiary

14  *or any of their authorized agents*" to initiate foreclosure.  CAL. CIV. CODE §

15  2924(a)(1) (emphasis added).  Indeed, "'[t]here is no stated requirement in

16  California's non–judicial foreclosure scheme that requires a beneficial interest in

17  the Note to foreclose."  *Cerecedes v. U.S. Bankcorp*, No. cv-11-219, 2011 WL

18  2711071, at *5 (C.D. Cal. July 11, 2011).  Therefore, even assuming that Chase or

19  DBNTC lacked a beneficial interest in the Zivanics' note, such an interest is

20  unnecessary "to commence a non–judicial foreclosure sale."  *Lane v. Vitek Real

21  Estate Indus. Group*, 713 F. Supp. 2d 1092, 1099 (E.D. Cal. 2010).[8]

22         In short, even if Plaintiffs challenge the foreclosure based on irregularities in

23

_____

24  [8] Plaintiffs' citation to *Dimock v. Emerald Properties, LLC*, 81 Cal. App. 4th 868,
    876-88 (2000) is inapposite.  (Opp. at 3:20).  *Dimock* "did not address the tender
25  rule, but held that a foreclosure sale by a former trustee, after a new trustee had
    been substituted in and the substitution had been recorded, was void and not
26  merely voidable."  *Nguyen v. Wells Fargo Bank, N.A.*, 749 F. Supp. 2d 1022, 1034
    (N.D. Cal. 2010).  As established above, Plaintiffs' arguments for why the
27  foreclosure was void both lack merit, so like *Nguyen*, *Dimock* does not apply.

28

9

1    the foreclosure process, the law still requires Plaintiffs to allege tender. *Alicea v.*

2    *GE Money Bank*, No. 09-c-91, 2009 WL 2136969 at *3 (N.D. Cal. July 16, 2009).

3    "The rules which govern tenders are strict and are strictly applied," and therefore

4    require dismissal of Plaintiffs' wrongful foreclosure claim here. *Nguyen v.*

5    *Calhoun*, 105 Cal. App. 4th 428, 439 (2003).

6                **2.      Plaintiffs' "Quasi-Contract" Claim Is Legally Defective**

7            Plaintiffs' "Quasi-Contract" claim fails because Plaintiffs allege that there is

8    an express written contract – the mortgage contract – between the Parties. (SAC at

9    6:6-11, 25:15-20, 25:24-26:1.) Under California law, an action in quasi-contract

10   does not lie "when an enforceable, binding agreement exists defining the rights of

11   the parties." *Total Coverage, Inc. v. Cendant Settlement Servs. Group*, 252 Fed.

12   Appx. 123, 126 (9th Cir. 2007). Plaintiffs' Opposition plays fast and loose with

13   their own factual allegations, stating that there was "no valid contract between

14   [the] Zivanics and Chase," and then claiming that it is Chase and DBNTC's burden

15   to "offer documents substantiating said notion." (Opp. at 7:14-15.)

16           But the SAC and judicially noticed documents tell a different story. The

17   SAC expressly states that the Zivanics entered the mortgage agreement with

18   WaMu, and "WAMU was later acquired by defendant Chase," and that the

19   Zivanics' mortgage loan was sold "to defendant Chase," and that Chase then "sold

20   it to Deutsche." (SAC at 13:14-18, 25:21-26:9.) A similar story unfolds in the

21   Zivanics' previously dismissed 2010 Complaint. (*See* RJN Ex. H at ¶¶ 25-50.) In

22   the prior Complaint, the Zivanics alleged that WaMu was the lender, that Chase

23   purchased most of WaMu's assets, and that the Zivanics sent correspondence to

24   "WAMU and/or CHASE," including an accepted "Special Forbearance

25   Agreement" attached to the Complaint with the Deed of Trust, and that they had

26   been told that "WAMU had become CHASE." (*Id.*) This is a far cry from the

27   claim that no valid mortgage contract exists with Chase. Plaintiffs are bound by

28   the allegations in their Complaints, and the Court should ignore inconsistent

1   arguments made only in their Opposition.  *See, e.g., Henthorn v. Dep't of Navy*, 29

2   F.3d 682, 688 (D.C. Cir. 1994) (contradictory allegations made in opposing motion

3   to dismiss "most certainly may not be considered when the facts they contain

4   contradict those alleged in the complaint.").

5        Plaintiffs' Opposition raises two additional arguments to save their quasi-

6   contract claim.  Both arguments relate to Chase, rather than DBNTC, and fail for

7   that reason alone.  They also lack merit.  ***First,*** Plaintiffs argue that Chase does not

8   have "standing to enforce" the note, because Chase is the servicer and beneficial

9   interest in the note had been transferred "to an investment bank."  (Opp. at 7:10-

10  8:2.)  Putting aside the contradictory allegations in their SAC, Plaintiffs' theory

11  appears to be that their mortgage was assigned to a mortgage trust pool, and

12  therefore, Chase allegedly lost its interest in the mortgage, and Plaintiffs'

13  obligation to make their mortgage payments was extinguished.  (*See id.; see also*

14  SAC at 60:28-61:3.)  Numerous courts have considered and rejected this theory.

15  *See, e.g., Lane v. Vitek Real Estate Indus. Group*, 713 F. Supp. 2d 1092, 1099

16  (E.D. Cal. 2010) ("The argument that parties lose their interest in a loan when it is

17  assigned to a trust pool has … been rejected by many district courts.").  Simply

18  put, "[t]here is no legal authority that the sale or pooling of investment interests in

19  an underlying note can relieve borrowers of their mortgage obligations or

20  extinguish a secured party's rights to foreclose on secured property.'"  *Taylor v.*

21  *CitiMortgage, Inc.*, No. 2:10-cv-505, 2010 WL 4683881, at *3 (D. Utah Nov. 10,

22  2010).

23        Plaintiffs' ***second*** defective argument is that the "equitable doctrine of unjust

24  enrichment applies" because Chase was not entitled to retain Plaintiffs' mortgage

25  payments.  (Opp. at 8:3-25.)  As a preliminary matter, Plaintiffs' cause of action

26  for "unjust enrichment" should be rejected because the weight of authority and

27  better reasoned cases hold that "there is no cause of action for unjust enrichment"

28  under California law.  *Bosinger v. Belden CDT, Inc.*, 358 Fed. Appx. 812, 815 (9th

Cir. 2009); *accord Romero v. Mortgage Co.*, No. 10-cv-5833, 2011 WL 2560252 at *3 (N.D. Cal. June 28, 2011).  In addition, Plaintiffs' unjust enrichment claim makes no sense on its face.  The Zivanics "default[ed]" on their mortgage (FAC, ¶ 101) and could only make "timely monthly payments if their loan [was] modified with a reasonable payment plan[]."  (*Id.*, ¶ 100.)  Nor could the speculation that Chase may not have "actually forwarded payments from [the] Zivanics to the beneficial owner of the loan" support an unjust enrichment claim.  (Opp. at 8:22-23.)  Even under Plaintiffs' implausible theory, retention of payments by Chase would have been at the expense of the purported "beneficial owner," not the Zivanics.  *See, e.g., Lee v. U.S. Bank*, No. 10-1434, 2010 WL 2635777, at *12 (N.D. Cal. June 30, 2010) (dismissing claim that lender "was 'unjustly enriched' each time [borrower] made his monthly mortgage payment").

### 3.   Plaintiffs Cannot Save Their Defective "No Contract" Claim

Similarly, Plaintiffs' seventh cause of action for "No Contract" is fatally defective for at least five reasons.  ***First***, like the quasi-contract claim, Plaintiffs' arguments all relate to Chase, rather than DBNTC, and in any event, where Plaintiffs have expressly alleged that there is a mortgage contract governing the relationship between Plaintiffs and Chase, they cannot credibly assert a "No Contract" Claim.   (SAC at 6:6-11, 25:15-20, 25:24-26:1.)  ***Second***, even if Plaintiffs could avoid their underlying mortgage contract, Plaintiffs provide no basis in their opposition to toll the statute of limitations, which would have run years ago.  (*Id.*, at 25:24-26:1 (Zivanics entered their mortgage contract in 2004)); *see also* CAL. CIV. PROC. CODE § 337.  ***Third***, even if the claim was timely, claims about WaMu's conduct and an alleged failure of "meeting of the minds" with WaMu in 2004 (Opp. at 9:3-13) can only be pursued against the FDIC, who retained liabilities against WaMu, not Chase or DBNTC.  *Grealish v. Wash. Mut. Bank FA*, No. 2:08-cv-763, 2009 WL 2170044, at *2 (D. Utah July 20, 2009)

12

1   (granting motion to dismiss WaMu claims, because Chase did not succeed to

2   WaMu's liabilities, so Plaintiff could only pursue remedies "against the FDIC

3   Receiver."). *Fourth*, to the extent Plaintiffs seek rescission of the underlying

4   mortgage contract, Plaintiffs failed to allege tender of the amount due, which is

5   required by California law. *Davenport v. Litton Loan Servicing*, 725 F. Supp. 2d

6   862, 880 (N.D. Cal. 2010); *see also* CAL. CIV. CODE § 1691(b). *Fifth*,

7   Plaintiffs' Opposition vaguely claims that their "No Contract" claim is based on

8   purported "underwriting fraud" and other alleged nondisclosures by WaMu leading

9   to no "meeting of minds" (Opp. at 9:3-11:15), but if so, this claim fails to plead

10  fraud with specificity under Fed. Rule Civ. Proc. 9(b). *See Javaheri v. JPMorgan*

11  *Chase Bank*, No. 10-cv-8185, 2011 WL 2173786, at *3 (C.D. Cal. June 2, 2011)

12  (dismissing similar contract claim on 9(b) grounds).

### 4.   Plaintiffs Do Not State A Claim For Quiet Title

14          Plaintiffs' failure to allege that they have discharged their debt is fatal to

15  their fifth cause of action to "Quiet Title." *Shimpones v. Stickney*, 219 Cal. 637,

16  649 (1934) (holding that it is "settled in California that a mortgagor cannot quiet

17  his title against the mortgagee without paying the debt secured."); *accord*

18  *Baidoobonso–Iam v. Bank of Am.*, No. 10-cv-9171, 2011 WL 3103165, at *7 (C.D.

19  Cal. July 25, 2011).

20          Plaintiffs seek to escape this result by arguing that the true lender is an

21  investment trust and that the loan was "pooled and sold to investors many times

22  over." (Opp. at 11:17-13:16.)  These arguments are all irrelevant though, because

23  Plaintiffs still must tender the amount due.  As the California Supreme Court held,

24  a "plaintiff in a quiet title suit is not helped by the weakness of his adversary's title

25  but must stand upon the strength of his or her own." *Shimpones*, 219 Cal. at 649.

26  Nor does it matter if the loan was pooled and sold to investors, because "[e]ven if

27  the mortgage is extinguished," Plaintiffs here "cannot, without paying [their] debt,

28  quiet title." *Ramirez v. SCME Mortg. Bankers*, No. 09-cv-1931, 2010 WL

13

2839476, at *4 (S.D. Cal. July 19, 2010); *see Pedersen v. Greenpoint Mortg. Funding*, No. s-11-642, 2011 WL 3818560, at *12–*13 (E.D. Cal. Aug. 29, 2011) (dismissing quiet title claim alleging that securitization of loan deprived defendant of interest in loan because "Plaintiffs have not suggested they are able to tender the amount due under the note, whether or not it is owed to defendants").

### 5. Plaintiffs Present No Basis To Prevent Dismissal Of The Declaratory And Injunctive Relief Causes Of Action

Plaintiffs do not oppose DBNTC's motion to dismiss the eighth cause of action. They cannot dispute that their purported eighth cause of action for declaratory and injunctive relief describe two remedies, rather than causes of action in California. *See, e.g., Aspray v. Fed. Home Loan Mortg. Corp.*, No. cv-11-299, 2011 WL 1532326, at *6 (C.D. Cal. Apr. 20, 2011). Whether Plaintiffs can establish entitlement to these forms of relief is irrelevant here – these simply are not independent causes of action and should be dismissed.

## III. CONCLUSION

Accordingly, DBNTC respectfully requests that the Court dismiss all Causes of Action alleged against it by Plaintiffs in the above-captioned action with prejudice.

DATED: May 7, 2012                        BINGHAM MCCUTCHEN LLP

By:  _____/s/ Peter Obstler_____
Peter Obstler
Attorneys for Defendant
Deutsche Bank National Trust Company,
in its capacity as Trustee of Washington
Mutual Mortgage Securities Corp. 2005-AR6